**AMERICAN INS. CO. et al.**
v.
**LESTER et al.**
**Civ. A. No. 390.**

United States District Court,
S. D. West Virginia,
Bluefield Division.

May 11, 1954.

Arthur F. Kingdon, Bluefield, W. Va., and Joseph M. Sanders, Bluefield, W. Va., for plaintiffs.

Joseph M. Crockett, Welch, W. Va., and Richardson, Hudgins & Hancock, Bluefield, W. Va., for defendants.

BARKSDALE, District Judge.

This action was instituted in February 1954 by American Insurance Company of New Jersey and twenty-three other fire insurance companies, plaintiffs, against Mart Lester and Ed Lester, individually and doing business as Lester Coal Company (hereinafter referred to as "Lester") and Correale Mining Corporation (hereinafter referred to as "Correale"), defendants, for the purpose of obtaining a declaratory judgment as to the liability, if any, of the plaintiffs for a fire loss, the amount of the loss, which, if either, defendant was entitled to recover, and for an injunction restraining defendants from proceeding separately on their claims in state courts. Defendants objected to such injunctive relief and filed their motions to dismiss this action for want of jurisdiction. Briefs were filed, and the pending motions came on for oral argument at Bluefield on April 7, 1954. During the course of the argument, counsel for plaintiffs asked leave to file an amended complaint, and such leave being granted, their amended complaint was filed by plaintiffs on April 15, 1954, defendants have filed their motions to dismiss the amended complaint on substantially the same grounds set out in their original motions to dismiss, briefs have been filed on behalf of all parties, and the matter has been submitted to me on the briefs on

938

plaintiffs' motion for injunctive relief and defendants' motions to dismiss the action. Of course, if the motions to dismiss should be granted, there would be no occasion to consider plaintiffs' motion for injunctive relief. I am of the opinion that the determination as to whether the motions to dismiss should be granted turns on the question of whether or not the necessary diversity of citizenship exists when the parties are properly aligned. For a consideration of this question, the pertinent facts may be briefly stated as follows:

## The Facts.

From the amended complaint, it appears that the Lesters are citizens and residents of West Virginia, Correale is a Delaware corporation domesticated in West Virginia, and the plaintiff fire insurance companies, with the states of their incorporation which determine their citizenship, are as follows:

| | Incorporated or Chartered in: |
|---|---|
| American Equitable Assurance Company | New York |
| Fulton Fire Insurance Company | New York |
| Home Insurance Company | New York |
| Merchants Fire Assurance Corporation | New York |
| United States Fire Insurance Company | New York |
| Glenns Falls Insurance Company | New York |
| Hartford Fire Insurance Company | Connecticut |
| Colonial Fire Underwriters of the National Fire Insurance Company | Connecticut |
| The Liverpool & London & Globe Insurance Company | England |
| Royal Exchange Assurance Company | England |
| The London Assurance | England |
| Yorkshire Insurance Company | England |
| Pennsylvania Fire Insurance Company | Pennsylvania |
| National Union Fire Insurance Company | Pennsylvania |
| Insurance Company of North America | Pennsylvania |
| Saint Paul Fire & Marine Insurance Company | Minnesota |
| Springfield Fire & Marine Insurance Company | Massachusetts |
| Boston Insurance Company | Massachusetts |
| American Insurance Company | New Jersey |
| Camden Fire Insurance Association | New Jersey |
| Provident Washington Insurance Company | Rhode Island |
| Milwaukee Insurance Company | Wisconsin |
| South Carolina Insurance Company | South Carolina |
| New Hampshire Fire Insurance Company | New Hampshire |

At all times pertinent to this controversy, National Shawmut Bank of Boston owned a tract of coal land in the Southern District of West Virginia. In July 1948, Correale became the lessee of this property, conducted mining operations thereon, and rebuilt or improved a tipple on the property and procured one policy of fire insurance in amounts varying from $3,500 to $20,000, a total of $239,500 the same being "blanket insurance", the insurance companies agreeing to pay whatever loss might be incurred on a pro rata basis, from each of the following seventeen plaintiffs:

American Equitable
Fulton
Hartford
Home
Liverpool & London & Globe
Merchants
Pennsylvania
Royal Exchange
Saint Paul

Boston
American
London
National Union
Providence
United States Fire
Yorkshire
Springfield

Thereafter, in March 1953, Correale subleased the same tract of coal land to Mart Lester, and by the terms of the lease Lester agreed to keep all of the leased property insured, at his expense, for the benefit of Correale, up to "its full reasonable insurable risks, or will pay the costs of maintaining throughout the life of this lease insurance on said equipment and machinery as now carried by Correale." No change was made in the blanket insurance which had been procured by Correale and was then outstanding, but on June 24, 1953, Lester procured from one Dennis, the same agent who had issued the Correale insurance, a "Binder", which immediately put into effect fire insurance, specifically covering the tipple and two generators, in the amount of $50,000, and certain other machinery and equipment, in the sum of $30,000, for the benefit of both Correale and the Lesters. On that date, Lester paid the full premium of $1,500 on this insurance and received a copy of the Binder. Coverage was effected by means of a Binder, rather than by the issuance of insurance policies, for the reason that the agent wanted to see the lease from Correale to Lester and wanted up-to-date information upon the values of the property covered. The desired information was not given to the agent prior to the fire, but thereafter, in July 1953, the agent issued policies, in the amount of $5,000 each, in the name of each of the ten companies included in the Binder, insuring "Correale Mining Corporation and/or Mart and Edward Lester d. b. a. Lester Coal Company * * * as interests may appear * * * to the extent of the actual cash value of the property at the time of loss * * *". Each policy provides that each company shall be liable pro rata. These policies have

never been delivered by the agent to Lester or anyone else. The agent, Dennis, included the following plaintiffs as insurers in this Binder and so notified them by letter:

American
Boston
London Assurance
National Union
Providence
United States Fire
Yorkshire
Colonial
Milwaukee
South Carolina

In the same letter, the agent advised these ten companies to cancel any property damage insurance they had on the same property in the name of Correale. Of these ten companies, the seven first named had insurance outstanding for the benefit of Correale; the last three named, prior to the issuance of the Binder, had no insurance for the benefit of anyone on this property. However, the Correale insurance was not cancelled.

On June 28, 1953, a fire occurred which totally destroyed, or very substantially injured, the tipple.

Plaintiffs allege (paragraphs 8 and 9) that:

"8. Correale and Lester are now both claiming that they are entitled to recover, with the result that ten of the complainants are being looked to by Correale (total blanket insurance in favor of Correale only, $131,000.00); seven of your complainants are being looked to by both Correale and Lester (total blanket insurance in favor of Correale only, $108,500.00; specific insurance on the tipple in the name of both Correale and Lester $28,000.00); and three of your complainants are insurers only on the Binder issued June 24, 1953 to Correale and Lester in the amount of $15,000.00 ($12,000.00 applicable to tipple).

"(9) Because of the identical pro rata provisions of said policies and

..because the insurance issued to Correale is blanket insurance, whereas the insurance taken out by Lester in the joint names of Correale and Lester is specific insurance, it is absolutely necessary that Complainants have the validity or invalidity of the June 24th, 1953 insurance adjudicated by this court; and if adjudged to be in force, then it will be necessary to determine who owns said insurance."

Plaintiffs further allege that they have not negotiated with the Lesters, but that they have negotiated with Correale in regard to the fire loss and in regard to the liability on certain Use and Occupancy insurance issued by some of the plaintiffs (not material to the question here under consideration), and that, without admitting liability, a valuation of $67,833.33 was agreed upon as the amount of the fire damage to the tipple. However, plaintiffs further allege that they have subsequently discovered certain fraudulent conduct on the part of Correale which would defeat any recovery on its part.

Plaintiffs further allege that the Lesters have instituted in the Circuit Court of McDowell County ten separate actions at law, for $2,950 each, against the ten companies who were participants in the Binder coverage; and further, that Correale has threatened to institute actions against all the plaintiffs in the state courts of Pennsylvania.

In the original complaint, the first prayer was that the court adjudge:

"(a) Which insurers should pay for the loss of the tipple and upon which policies."

In the amended complaint, the court is requested to adjudge:

"(b) Whether Correale Mining Corporation is entitled to recover anything upon any of the U and O policies or the Binder.

"(c) If so, upon what policies and in what amounts?, and

"(d) Whether the Binder issued in June 1953, or the policies written up in July 1953, are valid and in effect; if not, should the premium paid by Lester be refunded; if said insurance is in effect, to whom does it belong; if to the Lesters, upon what basis or theory do they have an insurable interest, and what amount are they entitled to."

### Discussion and Conclusion.

Plaintiffs, by counsel, contend that the parties are properly aligned, and that the necessary diversity exists. They contend that there is no controversy between the plaintiffs, and that they stand united against the defendants. It is true that, as to the determination of the amount of the loss, the interests of all the plaintiffs is identical, i. e., to keep the valuation of the loss as low as possible. However, this would seem to be, under the circumstances, a matter of relatively little importance and practically a moot question, because, without prejudice to their respective contentions as to liability, the plaintiffs have agreed with Correale on a valuation of the loss.

It is also true that it is to the interests of all plaintiffs to defeat, if possible, any recovery at all by either defendant. However, undoubtedly, a substantial fire loss has occurred, at a time when, exclusive of U and O coverage, twenty of the plaintiffs had outstanding fire insurance coverage, including the blanket insurance to Correale, and the Binder coverage to Correale and the Lesters as their interests might appear. I am satisfied that, no matter how euphemistically plaintiffs may phrase their prayers for relief, the most important controversy for adjudication in this action is the controversy between the plaintiffs bound by the blanket insurance and the plaintiffs bound by the Binder coverage. In this controversy, plaintiffs who are citizens of the same state or of the same foreign country, are on opposite sides. For instance, if the Binder companies should be required to pay the entire loss, Colonial, a Connecticut company, would be bound, and Hartford, a Connecticut company, would be relieved

of all liability. United States Fire, a New York company, is included in both the Binder coverage and the blanket coverage. If all the loss should fall upon the Binder companies, United States Fire would be bound, and the other four New York companies, American Equitable, Fulton, Home, and Merchants, would be relieved of all liability. Similarly, Yorkshire, an English company, is included in both the Binder coverage and the blanket coverage. Consequently, if all the loss should fall on the Binder companies, Yorkshire would be bound and the other three English companies, Liverpool & London & Globe, Royal Exchange, and London, would be relieved. If all the loss should fall upon the blanket companies, Colonial would be relieved of all liability, and the liability of both United States Fire and Yorkshire would be much less in amount than if all the loss fell on the Binder companies. Therefore, it seems obvious to me that, as to this controversy, the plaintiffs who stand to benefit by having the loss fall on the Binder companies must be aligned on the one side, and the companies which stand to benefit from having the blanket companies bear the loss must be aligned on the other side. When this alignment is made, there is no diversity.

"67. With a plurality of plaintiffs or defendants in diverse citizenship cases, the jurisdiction of the District Court attaches only when every plaintiff possesses the requisite diversity as to every defendant. In suits between citizens of different states, if there be one plaintiff and one defendant both from the same state, there is no jurisdiction. In suits, involving aliens, there is no jurisdiction with both an alien plaintiff and an alien defendant, or with a single plaintiff and single defendant from the same state.

"In aligning the parties—that is, in determining whether each belongs on the plaintiff side or on the defendant side of the suit—the federal courts are not bound by the arrangement of these parties by the pleadings; but those courts will work out these questions for themselves and the jurisdiction will be determined accordingly." Dobie on Federal Procedure 209.

See also State Farm Mutual Auto. Ins. Co. v. Hugee, 4 Cir., 115 F.2d 298, 132 A.L.R. 188, Maryland Casualty Co. v. Boyle, 4 Cir., 123 F.2d 558, and the very recent case of United States Fidelity & Guaranty Co. v. Harriss, etc., D.C., 119 F.Supp. 566.

I do not find it necessary to pass on the questions raised as to the amount in controversy, whether or not in the exercise of its discretion this Court should retain this suit, or the right of plaintiffs to injunctive relief, because it follows that an order will be entered dismissing this action for want of jurisdiction because the necessary diversity does not exist.