**AMERICAN INS. CO. et al.**

v.

**LESTER et al.**

No. 6825.

United States Court of Appeals
Fourth Circuit.

Argued June 17, 1954.

Decided July 23, 1954.

Arthur F. Kingdon, Bluefield, W. Va. (Joseph M. Sanders, Bluefield, W. Va., on brief), for appellants.

Paul S. Hudgins, Bluefield, W. Va. (George Richardson, Jr., Bluefield, W. Va., on brief), for Correale Mining Corp., and Joseph M. Crockett, Welch, W. Va. (Crockett & Tutwiler, Welch, W. Va., on brief), for Mart and Ed Lester, appellees.

Before PARKER, Chief Judge, DOBIE, Circuit Judge, and TIMMERMAN, District Judge.

DOBIE, Circuit Judge.

Twenty-four fire insurance corporations, incorporated under the laws of various States of the United States other than West Virginia and under the laws of England, as plaintiffs, filed a civil

action in the United States District Court for the Southern District of West Virginia, seeking a declaratory judgment against Mart Lester and Ed Lester, individually and doing business as Lester Coal Company, and against Correale Mining Corporation as defendants. Both the Lesters are citizens of West Virginia and Correale is a Delaware corporation domesticated in West Virginia.

These plaintiffs, in groups, had issued fire insurance policies (of three different kinds, which will hereinafter be considered) to Correale and/or the Lesters. A coal-tipple, of which Correale was the lessor and Mart Lester was the lessee, was destroyed by fire on June 28, 1953. It is the liability, if any, of the plaintiffs to Correale and/or the Lesters, for this fire loss, with which we are concerned.

Long prior to June 24, 1953, plaintiffs American Equitable, Fulton, Hartford, Home, Liverpool & London & Globe, Merchants, Pennsylvania, Royal Exchange, Saint Paul, Boston, American, London, National Union, Providence, United States Fire, Yorkshire and Springfield each issued to Correale one policy of fire insurance in amounts varying from $3,500 to $20,000 (total $239,500) on real and personal property of every description owned by Correale and situate in Buchanan County, Virginia. This insurance was in force on June 28, 1953. The tipple was not specifically insured under these policies; the insurance was what is known as "blanket insurance." Each policy provided that the insurer should not be liable for any loss greater than its pro rata of the "whole insurance covering the property against the peril involved, whether collectible or not."

In March, 1953, Correale leased to Mart Lester all the unmined coal in a certain Cedar Grove Seam and all machinery, equipment, buildings and structures upon the land. The coal-tipple was a part of the structures included in this lease. The lease provided that Lester will keep all of the leased property insured at his expense for the benefit of

Correale up to "its full reasonable insurable risks, or will pay the cost of maintaining throughout the life of this lease insurance on said equipment and machinery as now carried by Correale." In June, 1953, before the fire, the Lesters procured fire insurance policies on the leased property in ten of the plaintiff companies; these policies were what is known as "binder insurance," and insured Correale and the Lesters "as interest may appear."

Prior to June 24, 1953, twelve of the plaintiff companies had issued policies of business interruption insurance (known as "use and occupancy" or "U and O" insurance) to Correale, by the terms of which Correale was insured for certain losses arising from interruption of business caused by the destruction of this tipple.

Plaintiffs alleged that they had not negotiated with Lester in regard to the tipple loss, but they have negotiated with Correale in regard to both this loss and the business interruption loss, and that upon certain written representations of Correale, dated November 18, 1953, plaintiffs who are on the blanket policies to Correale agreed to compromise with the insured on the basis of a valuation of $67,833.33 for the tipple; but it was provided in this agreement that no liability was thereby created and that there was no waiver of the filing of proofs of loss. It was also made clear to Correale that it would be necessary to obtain the consent of these plaintiffs to pay the amount named in the valuation, and that this involved ascertaining the status of the binder insurance taken out by Lester on June 24, 1953, the validity and ownership of which was in question.

The blanket policies issued to Correale contained the following provision:

"This entire policy shall be void if, whether before or after a loss, the insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the insured therein, or in case of

fraud or false swearing by the insured relating thereto."

Plaintiffs further allege that Correale did wilfully misrepresent and conceal material facts and circumstances concerning this insurance and the subject thereof, and the interest of Correale therein and was guilty of fraud relating thereto.

On December 31, 1953, Mart and Ed Lester instituted in the Circuit Court of McDowell County, West Virginia, ten separate actions at law against the companies issuing the binder policies and Correale for $2,950 each. Alleged proofs were presented to one of counsel for these companies by counsel for Mart and Ed Lester (but not accepted) in which $4,000 is claimed upon each policy, because: "said tipple was essential to operating said lease; and that after said fire the undersigned had been unable to operate the lease and had lost considerable money thereby; and the Lessor, Correale Mining Corporation, has refused to rebuild said tipple." The Lesters apparently mean that they expect to recover anticipated profits from the continued operation of the mining property of which the destroyed tipple was a part. It seems obvious that only $2,950 was claimed in each of these civil actions in order to prevent removal to a federal court. It is alleged by counsel for plaintiffs herein that they and counsel for the Lesters had an agreement whereby if litigation became necessary it would be conducted in the United States District Court for the Southern District of West Virginia.

Plaintiffs issuing the policies outstanding in the name of Correale only were informed by letter of January 29, 1954, from Correale that they would be sued in the "local county courts" of Luzerne County, Pennsylvania, if settlement was not made by February 20, 1954.

Plaintiffs herein insist that it would be impossible to adjudicate the matters set out in this complaint in an action at law tried by a jury; and that even if it were possible to do so, it would be inequitable, unreasonable, and extremely costly in time and money to try the same issues ten times (and perhaps thirty-four times) and with varying results; and that these plaintiffs are, therefore, entitled to come into this court with this proceeding which seeks declaratory relief. They further aver that they have united in this Complaint for the sole purpose of obtaining a prompt, fair and expeditious disposition of the matters involved and that there is no controversy between themselves—the sole controversy is between plaintiffs and the defendants.

The Complaint concludes with the following demands:

"Complainants further demand that the defendants Mart and Ed Lester be restrained from proceeding with their actions at law, and that this court adjudicate the issues between the complainants and the defendants arising out of the occurrences and transactions set forth herein."

Certainly here is an extremely complicated insurance situation. Indeed, it is difficult to understand why a capable insurance agent and hard-headed business men would enter into so involved a business arrangement. And it would seem to follow that a declaratory judgment, which in one court and in a single proceeding, could resolve these vexatious issues between all the parties, would, in the language of doctors, "be clearly indicated."

The District Judge, 120 F.Supp. 937, 940, dismissed the instant civil action on the score that when the parties thereto were properly aligned, the requisite diversity of citizenship, which would give the District Court jurisdiction, was utterly lacking. The plaintiffs have duly appealed to us.

Said the District Judge in his opinion:

"It is also true that it is to the interests of all plaintiffs to defeat, if possible, any recovery at all by either defendant. However, undoubtedly, a substantial fire loss has oc-

curred, at a time when, exclusive of U. and O. coverage, twenty of the plaintiffs had outstanding fire insurance coverage, including the blanket insurance to Correale, and the Binder coverage to Correale and the Lesters as their interests might appear. I am satisfied that, no matter how euphemistically plaintiffs may phrase their prayers for relief, the most important controversy for adjudication in this action is the controversy between the plaintiffs bound by the blanket insurance and the plaintiffs bound by the Binder coverage. In this controversy, plaintiffs who are citizens of the same state or of the same foreign country, are on opposite sides. For instance, if the Binder companies should be required to pay the entire loss, Colonial, a Connecticut company, would be bound, and Hartford, a Connecticut company, would be relieved of all liability. United States Fire, a New York company, is included in both the Binder coverage and the blanket coverage. If all the loss should fall upon the Binder companies, United States Fire would be bound, and the other four New York companies, American Equitable, Fulton, Home, and Merchants, would be relieved of all liability. Similarly, Yorkshire, an English company, is included in both the Binder coverage and the blanket coverage. Consequently, if all the loss would fall on the Binder companies, Yorkshire would be bound and the other three English companies, Liverpool & London & Globe, Royal Exchange, and London, would be relieved. If all the loss should fall upon the blanket companies, Colonial would be relieved of all liability, and the liability of both United States Fire and Yorkshire would be much less in amount than if all the loss fell on the Binder companies. Therefore, it seems obvious to me that, as to this controversy, the plaintiffs who stand to benefit by having the loss fall on the Binder companies must be aligned on the one side, and the companies which stand to benefit from having the blanket companies bear the loss must be aligned on the other side. When this alignment is made, there is no diversity."

■ It is, of course, true that, for purposes of jurisdiction, a federal court is not bound by the alignment of the parties in the pleadings; but the court will work out for itself, as the interests of the parties appear, the proper alignment. We think, however, the District Judge erred in holding: "The most important controversy for adjudication in this action is the controversy between the plaintiffs bound by the blanket insurance and the plaintiffs bound by the Binder coverage." It seems to us that such a "controversy between the plaintiffs" is comparatively inconsequential. It may never arise and would not arise unless on the merits this case is decided in a particular way. Even then, such a controversy would be of minor importance and only incidental to the main issues.

■ The big issues in the instant case, as we see them, are the invalidity of the policies on the score of alleged fraud; the protection of the plaintiffs against two liabilities on the policies, one to Correale and one to the Lesters; and the safeguarding of plaintiffs against multifarious civil actions in different courts, in which utterly inconsistent results might well be reached. On these paramount issues, there is a sharp line of cleavage between all of the plaintiffs on the one hand, and all of the defendants on the other hand. Thus the requisite diversity of citizenship existed, as the parties were aligned in the District Court, and there is complete jurisdiction on that score.

If this be true, as we believe it is, the District Court's jurisdiction should not be defeated, as we have already indicated, by the mere possibility that in some situation which the case might assume

when tried on the merits, some slight conflict of interest might arise between two or more of the insurer-plaintiffs which are citizens of the same State.

Said Judge Parker, speaking for our Court, in the leading case of Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 325:

"The statute providing for declaratory judgments meets a real need and should be liberally construed to accomplish the purpose intended, i. e., to afford a speedy and inexpensive method of adjudicating legal disputes without invoking the coercive remedies of the old procedure, and to settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of the rights or a disturbance of the relationships. Whether the remedy shall be accorded one who petitions for it is a matter resting in the sound discretion of the trial court, to be reasonably exercised in furtherance of the purposes of the statute. * * * As was well said by Professor Borchard (Declaratory Judgments 107–109):

" 'The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' "

It would seem that the instant case satisfies these two criteria set out by Professor Borchard. See, also, Automotive Equipment Co. v. Trico Products Corporation, D.C., 11 F.Supp. 292, 294, 295.

■ Since this case must be remanded to the District Court, we think it advisable to express the view that it has the power, to be exercised in its discretion, to enjoin the Lesters from proceeding further in the civil actions they have filed in the West Virginia State court. Without such a power, the granting of a declaratory judgment may well, in many cases as in the instant case, fall short of attaining the objectives which are sought in proceedings looking to a declaratory judgment. The power of the court to grant injunctive relief in such cases is not forbidden by 28 U.S.C. § 2283, since the exercise of the injunctive power is not only "in aid" of the court's jurisdiction but is essential to its effective exercise. See Pacific Fire Ins. Co. v. C. C. Anderson, D.C., 42 F.Supp. 917; Continental Casualty Co. v. National Household Distributors, D.C., 32 F.Supp. 849; Brown v. Pacific Mutual Life Ins. Co., 4 Cir., 62 F.2d 711, 713–714; Jamerson v. Alliance Ins. Co. of Philadelphia, 7 Cir., 87 F.2d 253; Equitable Life Assur. Soc. v. Wert, 8 Cir., 102 F.2d 10, 13; French v. Hay, 22 Wall. 250, 22 L.Ed. 857; Looney v. Eastern Texas R. R. Co., 247 U.S. 214, 221, 38 S.Ct. 460, 62 L.Ed. 1084; Essanay Film Mfg. Co. v. Kane, 258 U.S. 358, 361, 42 S.Ct. 318, 66 L.Ed. 658.

To quote Judge Parker again, in Aetna Casualty & Surety Co. v. Quarles, 92 F.2d 321, 324:

"No one would question the power of the federal courts to grant injunctions in proper cases; but nothing is better settled than that whether or not injunctive relief shall be granted is a matter resting in the sound discretion of the trial judge."

See, also, Cavanaugh v. Looney, 248 U.S. 453, 456, 39 S.Ct. 142, 63 L.Ed. 354; Central Surety & Insurance Corporation v. Caswell, 5 Cir., 91 F.2d 607; Standard Accident Insurance Co. v. Grimmett, D.C., 32 F.Supp. 81, 82.

For the reasons heretofore assigned, the judgment of the District Court is reversed, and the case is remanded to that court for further proceedings in accordance with this opinion.

Reversed and remanded.