443 F.2d 404
 ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Appellee,
v.
Herbert Phillip LACK, Appellant, and
Charles M. Ivey, Administrator of the estate of Mary Carolyn Lack, Deceased, Intervening Defendant.
 No. 15204.
 United States Court of Appeals, Fourth Circuit.
 Argued March 2, 1971.
 Decided June 15, 1971.
 
 Michael Kent Curtis, Greensboro, N. C. (Norman B. Smith, Greensboro, N. C. [Court-assigned counsel] and Smith & Patterson, Greensboro, N. C., on the brief), for appellant.
 William D. Caffrey, Greensboro, N. C. (Eugene W. Purdom and Jordan, Wright, Nichols, Caffrey & Hill, Greensboro, N. C., on the brief), for appellees.
 Before BOREMAN, WINTER and BUTZNER, Circuit Judges.
 BOREMAN, Circuit Judge:
 
 
 1
 Mr. and Mrs. Herbert Phillip Lack were insured by St. Paul Fire and Marine Insurance Company (hereafter St. Paul) under a homeowner's policy which provided, in part, that St. Paul agreed to pay on behalf of the insured all damages for which the insured might become legally obligated resulting from the infliction of bodily injury and to defend suits against the insured brought for the recovery of damages resulting from bodily injury. However, this coverage did not extend to bodily injury "caused intentionally by or at the direction of the insured."
 
 
 2
 In the early part of March 1969, during an argument between the Lacks, Mrs. Lack was killed as a result of a wound inflicted by the discharge of a shotgun held by Mr. Lack. Subsequently Mr. Lack entered a plea of guilty to voluntary manslaughter and was sentenced to a term of six to eight years in the North Carolina State Prison.
 
 
 3
 On November 26, 1969, the administrator of the estate of Mrs. Lack filed a wrongful death action against Mr. Lack in an appropriate state court of North Carolina. The administrator sought to recover the sum of $600,000 by reason of the wrongful death and an additional sum of $1,272 for funeral expenses.
 
 
 4
 On December 29, 1969, St. Paul brought this action in the district court in which it sought a judgment declaring that it was not obligated to defend Mr. Lack in any case brought by the administrator of Mrs. Lack's estate or to pay any judgment obtained against Mr. Lack by the administrator. St. Paul was concerned with the conflict of interest with which it would be confronted should it choose to defend or decline to defend its insured, Mr. Lack, against the claim of the administrator in the state court. Under the terms of the policy St. Paul will be absolved of liability should it be judicially determined that Mr. Lack intentionally shot and killed his wife. Such a determination would not, however, absolve Mr. Lack of liability for his wrongful act. St. Paul sought to litigate this question of Mr. Lack's intent in the federal court and, in the event of a determination that the killing was intentional, a declaration that St. Paul was not required to defend Mr. Lack in the wrongful death action.
 
 
 5
 On February 9, 1970, the district court enjoined further proceedings in the state court until the conclusion of the federal litigation "or further order of the court." Counsel was subsequently appointed for Lack who, on July 31, 1970, filed a motion to dissolve the injunction, which motion was denied on September 10, 1970.[1] Lack appeals from the order of September 10 denying his motion to dissolve the injunction.[2]
 
 
 6
 The legal question on appeal is whether the district court erred in enjoining the state court proceedings (order by Judge Gordon) and in refusing to dissolve the injunction (order by Chief Judge Stanley) in light of the federal anti-injunction statute, 28 U.S.C. § 2283.[3] The district court, in its order enjoining further proceedings in the state court, found authority for the issuance of the injunction in one of the exceptions to the anti-injunction statute and stated that a stay of the state court action "would be in furtherance of and an aid to the jurisdiction of this Court in this case." The court seemingly arrived at its conclusion in view of the identical issue presented in both the state and federal suits, i. e., whether Mrs. Lack's death was intentionally caused by Mr. Lack or was accidental.
 
 
 7
 In support of the grant of its requested injunction by the district court, St. Paul relies primarily upon American Ins. Co. v. Lester, 214 F.2d 578 (4 Cir. 1954). Lester, however, is clearly distinguishable on its facts. Involved there was "an extremely complicated insurance situation," 214 F.2d at 580,[4] which presented a possibility of a multiplicity of state actions in any one of which all of the interested parties could not, perhaps, have been gathered, and which indicated an "obvious" attempt by plaintiffs, in the state actions sought to be enjoined, to avoid litigation in a federal forum by filing many separate actions for damages, each for a sum slightly less than the then-required federal jurisdictional amount. Further, there was an alleged agreement among counsel for some of the parties whereby if litigation became necessary, it would be conducted in the appropriate federal district court. Assuming that the court in Lester correctly authorized the district court in its discretion to consider enjoining the state court suits, we do not find Lester to be persuasive authority to support the action of the district court in enjoining state court proceedings in the instant case.
 
 
 8
 St. Paul also cites Stout v. Grain Dealers Mutual Ins. Co., 307 F.2d 521 (4 Cir. 1962), in support of its position. Stout, however, is inapposite. The propriety of an injunction against state court proceedings was not at issue in that case.
 
 
 9
 The rule is well established that where federal and state courts have concurrent jurisdiction over actions involving an identical issue and both are in personam the actions may proceed simultaneously and neither court may enjoin the other proceeding. Donovan v. City of Dallas, 377 U.S. 408, 84 S.Ct. 1579, 12 L.Ed.2d 409 (1964); Kline v. Burke Constr. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). This court has applied this general rule in a case somewhat similar to the one at bar in denying an injunction to an insurer who sought a judgment declaring its right to refuse to defend an insured in a state action begun prior to the federal litigation. Aetna Casualty & Surety Co. v. Yeatts, 99 F.2d 665 (4 Cir. 1938). In Yeatts, the plaintiff insurance company faced, as does St. Paul, a possible conflict of interest with its insured if it chose to appear in the state court action brought against the insured. Speaking for the court, the late Judge Soper wrote that:
 
 
 10
 "It may be embarrassing for the insurer here either to defend the action in the state court or to decline to do so, but that is a difficulty inherent in the provisions of its policy. * * *
 
 
 11
 "* * * Obviously the existence of a controversy between the parties to the insurance policy should not preclude the injured party, a stranger to the contract, from pressing his claim against the insured with all diligence in the state court. Nor will such action on his part interfere with the proceedings in the federal court. In short, each court may proceed with the case before it without reference to the other, except insofar as a prior decision in one tribunal may constitute res adjudicata on one or more questions involved in a subsequent trial in the other." 99 F.2d at 670.
 
 
 12
 We conclude that the injunction granted here was not, in any way, necessary in aid of the district court's jurisdiction. Our decision is buttressed by the caveat of the Supreme Court in Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 297, 90 S.Ct. 1739, 1748, 26 L.Ed.2d 234 (1970), that, "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion. * * *" The district court's order of September 10, 1970, denying Lack's motion to dissolve the stay of the state court action should be vacated and the injunction dissolved.
 
 
 13
 It is so ordered.
 
 
 
 Notes:
 
 
 [1]
 Also on September 10, 1970, the administrator of Mrs. Lack's estate (plaintiff in the state court case) was permitted to intervene as a defendant in the district court
 
 
 [2]
 Subsequently, on September 25, 1970, Lack filed a motion to stay all proceedings in the district court pending the disposition of this appeal. The motion was denied by the district court on October 15, 1970, and a similar motion was denied by this court on December 9, 1970
 
 
 [3]
 28 U.S.C. § 2283 provides:
 A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.
 
 
 [4]
 There were twenty-four insurance companies involved, incorporated under the laws of various states and the laws of England. They were seeking a declaratory judgment in the federal court against citizens of West Virginia and a Delaware corporation domesticated in West Virginia to determine their respective rights and liabilities. The claims of the state court plaintiffs were predicated upon the destruction by fire of a valuable coal tipple and personal property, a loss which was protected by blanket insurance policies covering unspecified real and personal property issued by several of the twenty-four companies in varying amounts, some of which companies had agreements among themselves that any loss liability would be prorated among them in the same proportion as the amount of each policy bore to the total coverage of all the policies. Other of the insurance companies had issued insurance binders to different parties as their interests might appear, and some of the policies covered also any damages incurred through loss of use and occupation of the insured premises
 The principal issue on appeal was the correctness of the district court's determination that requisite diversity jurisdiction was lacking. Finding such requisite jurisdiction this court reversed and remanded.