**The MARYLAND CASUALTY COMPANY, Plaintiff,**

v.

**W.R. GRACE & COMPANY, Continental Casualty Company, Royal Indemnity Company, Aetna Casualty and Surety Company, and General Insurance Company of America, Defendants.**

**No. 83 Civ. 7451 (SWK).**

United States District Court, S.D. New York.

Aug. 2, 1989.

Laura A. Foggan, Wiley, Rein & Fielding, Washington, D.C., for Maryland Cas. Co.

Randy Paar, Anderson Kill Olick & Oshinsky, P.C., New York City, for defendant W.R. Grace & Co.

Stuart C. Levene, Ford Marrin Esposito & Witmeyer, New York City, for defendant Continental Cas. Co.

James P. Donovan, Wilson, Elser, Moskowitz, Edelman & Dicker, New York City, for defendant Royal Indem. Co.

Scott L. Nelson, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for defendant Aetna Cas. & Sur. Co.

David G. Mulquin, Brault, Graham, Scott & Brault, Rockville, Md., for defendant General Ins. Co. of American.

David G. Valdez, Bivona & Cohen, New York City, for defendant American Intern. Group.

Thomas J. Quinn, Mendes & Mount, New York City, for defendant Lloyds and Companies.

## MEMORANDUM AND ORDER

LEONARD BERNIKOW, United States Magistrate.

Maryland Casualty Company ("Maryland") moves to enjoin W.R. Grace & Co. ("Grace"), pursuant to the All Writs Act, 28 U.S.C. § 1651(a), from litigating against Maryland in other forums over asbestos-related insurance coverage claims placed at issue by the amended complaint and counterclaim in this lawsuit.[1] A state court action recently filed by Grace in the District Court of Hennepin County, Minnesota, prompted this motion, but Maryland seeks to enjoin all asbestos insurance coverage actions Grace may file in the future against Maryland. For the reasons that follow we deny the motion.

*Background*

The Minnesota action involves coverage for three lawsuits in which public entities sought reimbursement for their asbestos removal costs. As a result of Grace's insurers' denial of coverage for these costs, Grace sued Maryland—along with another primary carrier and its excess carriers—for breach of contract. Grace settled the three state cases in February 1989 for $12 million.

In the instant case, pending for six years, Maryland seeks a declaratory judgment concerning its obligations to defend and indemnify Grace under comprehensive general liability insurance policies regarding asbestos-related bodily injury and property damage lawsuits. Maryland brings its motion because the issues presented by the new Minnesota state court action are before this court through Maryland's amended complaint and motion for partial summary judgment as well Grace's own counter-claim and motion for partial summary judgment. Although the Minnesota action concerns three asbestos-related building claims, thousands of asbestos-related claims are pending against Grace nationwide.

Maryland recognizes that ordinarily the pendency of parallel proceedings does not warrant injunctive relief. Its argument focuses on the complexity of the present case. This case, Maryland notes, concerns a comprehensive insurance coverage dispute involving all of Grace's primary insurers and all asbestos-related claims against Grace. Complex cases, the argument goes, require a single court's administration to advance the policy of comprehensive dispute resolution.

Maryland says that this is not the first time Grace has brought other similar lawsuits. Six months after Maryland initiated this lawsuit, Grace brought suit in the District of Columbia against other primary carriers. Maryland then successfully moved in this court to amend its complaint to add those carriers as defendants here. *See* Mem.Op. and Order, dated April 23, 1985. Grace then filed a third-party action against some of its insurers in *Dayton Independent School District v. W.R. Grace & Co.*, Nos. B–81–277–CA and B–81–293–CA (E.D.Tex., Third-party Complaint filed May 27, 1985). Grace did not sue Maryland in Texas, but the action there involved asbestos-related claims and thus, according to Maryland, constituted one more effort by Grace to litigate its asbestos-related claims in a tactical fashion.

Grace also sued its excess carriers in Massachusetts over asbestos-related insurance coverage. *W.R. Grace & Co. v. AIU Ins. Co.*, No. 87–3050 (Mass.Super.Ct. Complaint filed May 26, 1987). Maryland felt the Massachusetts forum was inappropriate and filed suit here to permit the transfer of this coverage dispute from Massachusetts to this court. The Massachusetts court dismissed Grace's action for *forum*

1. This case was referred to the undersigned for all purposes, with the consent of the parties pursuant to 28 U.S.C. § 636(c).

*non conveniens* in favor of the action Maryland started here.

Needless to say, Grace disputes that it filed the Minnesota action for tactical reasons. It points to the tens of millions of dollars it has paid to resolve asbestos-related claims without support from its insurance carriers. Grace adds that its efforts to recoup some of those payments, in limited proceedings based upon a specific breach of contract, does not impair this court's jurisdiction to decide this case. The Minnesota action alleges a claim based solely upon breach of contract with respect to two specific underlying property damage cases. That action is not duplicative of this proceeding, according to Grace, and involves largely different carriers. Also, this court's jurisdiction is not threatened by the Minnesota action, says Grace. Finally, Grace argues that the Anti–Injunction Act, 28 U.S.C. § 2283, severely limits the power of a federal court to enjoin state proceedings pursuant to 28 U.C.S. § 1651.

*Discussion*

The Anti–Injunction Act prohibits a federal court from enjoining state court proceedings except "where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. Maryland argues that these two exceptions pose no bar to an injunction.

The in aid of jurisdiction exception usually involves in rem actions where the court has jurisdiction over a res, 17 C. Wright, A. Miller, E. Cooper, Federal Practice & Procedure § 4225, at 528–29 (1988) ("Wright & Miller"), or school desegregation cases. *See In re Baldwin–United Corporation ("In re Baldwin")*, 770 F.2d 328, 337 (2d Cir.1985); *Crews v. Dickson*, No. 86–3858 (RJD), 1987 W.L. 6393, Westlaw slip op. at 2 (E.D.N.Y. Feb. 2, 1983). The exception also applies where " 'necessary to prevent

a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case.' " 17 Wright & Miller § 4225 at 531, quoting *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).

The Minnesota action is merely a parallel state *in personam* action to which the in aid of jurisdiction exception does not apply. See *Heyman v. Kline*, 456 F.2d 123, 131 (2d Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). Moreover, as Grace argues, that action will not interfere with this court's flexibility and authority to render a declaratory judgment. No interference occurs because the state court will decide issues of state law. *See Vernitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir.) *cert. denied*, 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971). In the *Dayton Independent School District* case, *see supra* p. 63, for example, Grace, in April 1987 brought a third-party action for breach of contract against Continental Casualty Company ("CNA"), one of the defendants in the case at bar, and twelve excess carriers.[2] CNA did not object to the Texas action, which involved the property damage claims of 83 Texas school districts. Although Maryland was not a party there, that action has not interfered with this action.[3] Indeed, Grace argues that the decision in Texas can assist this court in its analysis of the broader issues raised by the claims for declaratory relief. *See Vernitron Corp. v. Benjamin, supra*, 440 F.2d at 108.

As Maryland argues, however, *American Ins. Co. v. Lester*, 214 F.2d 578 (4th Cir.1954), supports an injunction. In that case, as in this one, a number of insurance companies sought a declaratory judgment

---

2. Some of these carriers, not parties to this action, filed motions to dismiss, transfer or stay the Texas action on *forum non conveniens* grounds in favor either of this proceeding or a declaratory judgment action filed by Grace in Massachusetts State Court. The Texas court denied these motions. The carriers then petitioned for a writ of mandamus, which was denied by the Fifth Circuit.

3. In the Texas action the district court granted Grace's motion for summary judgment on its breach of contract claim. *Dayton Indep. School Dist. v. National Gypsum Co.*, 682 F.Supp. 1403 (E.D.Tex.1988). The carriers have appealed and argument is set for September 1989.

in federal court. The coverage dispute there, though, concerned a fire that destroyed a coal loading device. A few days before the fire, one of the insureds obtained fire insurance policies—actually binders—from ten of the plaintiff companies. About six months after the fire,[4] the same insureds commenced ten separate actions in state court against the insurance companies that issued the binders. The Fourth Circuit directed the district court to enjoin the state court actions under the in aid of jurisdiction exception. 214 F.2d at 582.

Nevertheless, there are differences between our case and *Lester*. To begin with, each action brought in state court sought damages in amounts obviously designed to prevent removal to federal court. *Id.* at 580. In our case, Grace did not start suit in Minnesota to defeat this court's jurisdiction.[5] In addition, the insurance companies in *Lester* alleged that they had an agreement with counsel for the insureds that limited litigation to federal court. *Id.* Of course, the parties here have no such agreement.

Furthermore, as Grace points out, subsequent cases cast doubt on the authority of *Lester*. A later Fourth Circuit case has limited *Lester* to its facts. *St. Paul Fire and Marine Insurance Co. v. Lack*, 443 F.2d 404, 406–407 (4th Cir.1971); see also 17 Wright & Miller § 4225 at 535 n 16 (on 537–38). Other recent cases have given the in aid of jurisdiction exception a more narrow reading than the court did in *Lester*. *See Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, supra*, 398 U.S. at 295, 90 S.Ct. at 1747; *In re Baldwin, supra*, 770 F.2d at 336–37; *Crews v. Dickson, supra*, Westlaw slip op. at 2. Thus, we decline to follow *Lester*.

As for the exception to protect the court's judgments, the relitigation exception, no judgment has been entered nor is one likely soon. "[U]ntil the issuance of a final federal judgment the pendency of duplicative *in personam* actions in state court—even those actions derivative of the rights of parties to the federal action— would not ordinarily justify enjoining the state court actions." *In re Baldwin, supra*, 770 F.2d at 337; *see also* 1A J. Moore, Moore's Federal Practice ¶ 0.208a[3] at 2345 (2d ed. 1989).

Maryland relies on *In re Baldwin*, which involved a consolidated, multi-district class action against various broker-dealers who sold securities of the Baldwin United Corporation, a company that was bankrupt at least at the time of the appeal. The district court had not entered a final judgment there, yet "the parties in 18 of the 26 class actions had reached stipulated settlements that had been provisionally approved by the court and were awaiting final court approval, and the parties in the remaining 8 suits were continuing settlement negotiations." 770 F.2d at 336. Nevertheless, thirty one states, dissatisfied with the settlements as inadequate, threatened to bring suit on behalf of their citizens who were plaintiffs in the consolidated class actions.

The Second Circuit affirmed the preliminary injunction issued by the district court pursuant to the All Writs Act finding the injunction necessary to preserve that court's jurisdiction and protect its judgments.[6] The finality of every settled case could be defeated, the Second Circuit wrote, by subsequent state court suits. 770 F.2d at 336. The court also found the jurisdiction of the multidistrict court to be " 'analogous to that of a court in an in rem action or in a school desegregation case, where it is intolerable to have conflicting

---

4. About two months after the filing of the state actions, the companies initiated the federal suit.

5. We do not share Maryland's view that the Minnesota action violates this court's 1985 order granting it leave to add certain carriers as defendants. Even though Maryland sought to insure a comprehensive resolution of the insurance coverage issues, the April 23, 1985 order, *see supra* at 63, says nothing to suggest that

the court interdicted Grace from commencing other lawsuits.

6. The parties in *In re Baldwin* agreed that the Anti–Injunction Act was not applicable in that case because the injunction issued before the commencement of any state suits. 770 F.2d at 335. Still, the Second Circuit looked to the Anti–Injunction Act for help in interpreting the All Writs Act. *Id.*

orders from different courts.' " *Id.*, quoting 17 Wright & Miller § 4225 at 105 n. 8 (Supp.1985).

The considerations that persuaded the Second Circuit to affirm the injunction in *Baldwin* are not present here. For one thing, the present case does not involve the settlement of a class action. In *In re Baldwin,* the prospect of state actions threatened to impair the district court's flexibility and authority to approve settlements in the multi-district litigation. *Id.* at 337. The success of the federal settlement, which had occupied the court's time for months, depended on the ability of the plaintiffs to release the defendants. *Id.*

The interference posed by the expected state suits in *In re Baldwin* threatened the court's ability to render a final judgment. As a practical matter, the court noted that no defendants would settle claims that could be reasserted by states on behalf of their citizens who were plaintiffs in the federal action. *Id.* at 337. Likewise, Maryland argues that the Minnesota action undermines the potential for settlement here. But, unlike *In re Baldwin,* if a claim settles here, it cannot be raised elsewhere. In short, the state action poses no threat to any settlements.

Moreover, this case, though six years old, is not so far advanced as to be the equivalent of a res over which the court requires full control. *See id.* It is a major comprehensive case with multiple parties, to be sure, yet a final judgment is not about to be entered. Even in *In re Baldwin,* the court said that if prompt settlement with the remaining eight defendants was no longer likely the injunction might be lifted upon application. *Id.* at 338.

*Bruce v. Martin,* 680 F.Supp. 616 (S.D.N.Y.1988), also relied on by Maryland, does not support an injunction here. In that case, investors from fifteen states in limited partnerships alleged that the defendants engaged in a fraudulent "pyramid" scheme. *Id.* at 618. To finance their interest in the partnership, the investors executed promissory notes in favor of the limited partnership. The court enjoined the defendants from prosecuting collection suits on these notes other than as counterclaims in this court.[7] The court felt that its ability to afford the parties full and final relief would be jeopardized by scores of fragmented state suits based on the issues before it. *Id.* at 622. In our case, the Minnesota action does not prevent us from fashioning full and complete relief to the parties on the issues before us. Although the state action includes issues that will be decided here, this case is much broader, involving many more issues. But more than that, in *Martin,* traditional standards for injunctive relief governed. *Id.* at 620. The parties agreed that the Anti–Injunction Act did not prevent injunctive relief because the defendants had yet to bring any state court suits. *Id.* If such suits were already pending in state court, the court said, the Anti–Injunction Act would bar the injunction. *Id.*

In sum, we find the state action does not interfere with the court's jurisdiction or with its ability to render a complete and final judgment. We also find no improper purpose in the filing of the Minnesota action. Accordingly, the motion, insofar as it seeks to enjoin the Minnesota action, is denied.[8]

As noted, Maryland seeks an injunction barring Grace from commencing duplicative actions in the future. Grace has indicated, however, that it has no present intention to file any future litigation. It also represents that for a period starting now and continuing through October 31, 1989 it will not commence any additional asbestos coverage litigation against Maryland without informing this court and Maryland at least seven days prior to the commencement of such action. In view of these representations, though Grace's commitment does not satisfy Maryland, we also

---

7. The *Martin* court found that the defendants' counterclaims for collection of the notes were compulsory under Fed.R.Civ.P. 13(a). *Id.* at 619–620.

8. We, of course, express no opinion on any motion to stay the state action made in Minnesota.

deny the motion concerning future suits at this time.

It is so ordered.