**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Plaintiff,

v.

**A & S MANUFACTURING COMPANY, INC., et al., Defendants.**

Civ. A. No. HAR 93–241.

United States District Court,
D. Maryland.

Dec. 2, 1993.

Walter J. Andrews, Wiley, Rein and Fielding, Washington, DC, for plaintiff.

Charles R. Spigelman, K. Thomas Shahriari, Mitchell A. Stearn, Gilberg & Kurent, Washington, DC, for defendant Federal Ins. Co.

Lewis Anthony Sutin, Hogan and Hartson, Washington, DC, for defendant Hartford Acc. & Indem. Co.

## MEMORANDUM OPINION

HARGROVE, District Judge.

Plaintiff United States Fidelity and Guaranty Company ("USF & G") has brought this action for declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 to construe the rights and legal relations arising from contracts of liability insurance issued to A & S by USF & G and Co–Defendants Federal Insurance Company ("Federal") and Hartford Accident and Indemnity Company ("Hartford"). Jurisdiction is based solely on the diversity of the parties pursuant to 28 U.S.C. § 1332.

Defendant A & S has filed a Motion for Realignment of the Parties and to Dismiss the Complaint and Crossclaim for lack of subject matter jurisdiction. The Court has reviewed the parties' memoranda and exhibits, and will resolve the pending motion without convening a hearing. Local Rule 105.6 (D.Md.1992). For the reasons set forth in this memorandum opinion, the Court will grant defendant A & S's Motions.

### Facts

The United States Environmental Protection Agency ("EPA") has filed suit against A & S and other Defendants pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, et seq., seeking to recover from A & S and others the costs the EPA has incurred and will incur to respond to property damage allegedly caused by environmental contamination. United States of America v. Maryland Sand, Gravel and Stone Co., et al., No. HAR 89–2869 (D.Md.). Additional claims exist regarding alleged contamination or a threat of environmental contamination at other sites in New Jersey and Elkton, Maryland. A & S has given formal notice to USF & G, Federal and Hartford requesting indemnification and/or payment of the costs of its defense. All three insurers have refused to indemnify A & S.

On January 25, 1993, USF & G filed the instant action against defendants A & S, Federal, and Hartford seeking a declaration of the various right and duties among Federal, Hartford, A & S, and USF & G under 20 policies of insurance with respect to three different sites. Since the inception of this lawsuit, the insurers have brought various counterclaims and crossclaims against one another. Hartford has filed a third party complaint against Firemen's Fund Insurance Company ("Fireman's Fund").

USF & G alleges that the district court has subject matter jurisdiction under 28 U.S.C. § 1332 by virtue of the diversity of citizenship between USF & G and all of the defendants. USF & G is a Maryland corporation. Both A & S and Federal are corporations with their principal place of business in New Jersey. Therefore, both A & S and Federal are citizens of New Jersey for the purposes of diversity jurisdiction.

After USF & G filed its suit in district court, A & S filed its own declaratory judgment action against USF & G, Federal, Hartford, and American Insurance Company ("American"), a subsidiary of Fireman's Fund, in the Superior Court of New Jersey for Bergen County. A & S Manufacturing Co. v. Federal Ins. Co., et al., No. BER–L–1935–93 (N.J.Super.Ct., Bergen County, Law Div.). The New Jersey case is virtually identical to this federal action. It adds only an additional plaintiff, Martin Alexander as shareholder, director and officer of A & S, first party defendant, American Insurance Company, and site, the "Helen Kramer Landfill." In all other respects, it involves the same parties and sites, raises the same issues, and requests the same relief.

A & S moves to realign the parties in the instant action and to dismiss for lack of jurisdiction. It asserts that all four insurers are more properly aligned as plaintiffs in this action since the primary issue in dispute is whether the insurers have any duty to indemnify and defend A & S with respect to claims that the EPA has brought. As both A & S and Federal are citizens of the state of New Jersey for the purpose of diversity jurisdiction; realignment would destroy complete diversity between the opposing parties,

thereby depriving the district court of subject matter jurisdiction and warranting dismissal of the Complaint.

In the alternative, A & S seeks a stay of the federal proceeding pending the outcome of the state action. In the interim, the New Jersey state court has stayed the state action pending outcome of our decision in the federal action.

### Discussion

■  For purposes of jurisdiction, a federal court is not bound by the alignment of the parties in the pleadings. The court must determine for itself, as the interest of the parties appear, the proper alignment. *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 16–17, 86 L.Ed. 47 (1941).

The Supreme Court set forth the proper standard for realignment in *Indianapolis v. Chase National Bank*, 314 U.S. 63:

> To sustain diversity jurisdiction there must exist an "actual," "substantial" controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side ... Whether the necessary "collision of interests" exists, is therefore not to be determined by mechanical rules. It must be ascertained from the "principal purpose of the suit," and the "primary and controlling matter in dispute."

*Id.* at 69, 62 S.Ct. at 17 (citations omitted).

From the decision in *Indianapolis,* courts have evolved two similar but distinct tests to determine whether realignment is necessary.

■  The Third, Fifth, Sixth and Ninth Circuits endorse the "principal purpose" or "primary issue" test, reading the *Indianapolis* opinion literally. Under that test, a court must first identify the primary issue in controversy and then determine whether a real dispute exists between opposing parties over that issue. *See Employers Insurance of Wausau v. Crown Cork & Seal Co.*, 942 F.2d 862 (3d Cir.1991); *Zurn Industries, Inc. v. Acton Constr. Co.*, 847 F.2d 234 (5th Cir. 1988); *United States Fidelity & Guaranty Co. v. Thomas Solvent Co.*, 955 F.2d 1085 (6th Cir.1992); *Continental Airlines, Inc. v.*

*Goodyear Tire & Rubber Co.*, 819 F.2d 1519, 1523 n. 2 (9th Cir.1987). If no antagonism exists over the primary issue in dispute between the opposing parties, then realignment is proper.

The Second, Seventh, Eighth and Tenth Circuits use the "substantial controversy" test. According to that test, a court determines merely whether any substantial conflict exists between opposing parties, regardless of whether it is the primary issue in dispute or whether parties have a common position on equally important issues. *See Maryland Casualty Company v. W.R. Grace and Company*, 4 F.3d 155 (2nd Cir.1993); *American Motorists Insurance Company v. Trane Company*, 657 F.2d 146 (7th Cir.1981); *Universal Underwriters Insurance Co. v. Wagner*, 367 F.2d 866 (8th Cir.1966); *Farmers Alliance Mutual Insurance Co. v. Jones*, 570 F.2d 1384 (10th Cir.1978), *cert. denied*, 439 U.S. 826, 99 S.Ct. 97, 58 L.Ed.2d 119 (1978). As long as an actual, substantial conflict exists between opposing parties, realignment is not proper.

Neither the Fourth Circuit nor this Court have formally adopted a test for realignment where jurisdiction is based solely on diversity of citizenship. In *C.Y. Thomason Co. v. Lumbermens Mutual Casualty Co.*, 183 F.2d 729 (4th Cir.1950), the Fourth Circuit declined to realign the parties where an insurer raised a question of coverage in which its position was adverse to the insured and its surety on a construction project. In contrast, in *American Ins. Co. v. Lester*, 214 F.2d 578 (4th Cir.1954), the Fourth Circuit held the alignment of plaintiff insurers and defendant insureds was proper where a sharp line of cleavage divided all plaintiffs and all defendants on the "paramount issues." In reversing the lower court's decision to realign the parties, the Fourth Circuit took issue with the district court's conception of the main issue, not its approach. Whereas the district court had realigned the parties according to their issuance of two different types of insurance policies, the Fourth Circuit identified the "big issues" in the case as the validity of all of the insurance policies, the interpretation of two liabilities on the policies, and the desire to protect plaintiffs

from inconsistent results arising from multiple civil actions in different courts. 214 F.2d at 581.

More recently, a district court in the Fourth Circuit adopted the "principal purpose" test in realigning the parties in an insurance dispute. In *International Ins. Co. v. Virginia Ins. Guar. Ass'n*, 649 F.Supp. 58 (E.D.Va.1986), the Eastern District of Virginia held that:

> In determining whether diversity jurisdiction exists, however, the alignment of the parties as plaintiffs and defendants in the pleadings is not conclusive. Rather, it is incumbent upon the Court to look to the ultimate interests of each party and to realign the parties accordingly. *See, e.g., City of Dawson v. Columbia Avenue Saving Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 25 S.Ct. 420, 49 L.Ed. 713 (1905). The Court must determine these ultimate interests by reference to the principal purpose of the lawsuit and the primary and controlling matter in dispute. *Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47 (1941).

*Id.* at 60.

A & S contends that this Court should adopt the "principal purpose" or "primary issue" test. A & S identifies the principle issue in this case as whether any of the insurers owe A & S a duty to defend and/or indemnify it for the underlying environmental lawsuit. A & S asserts that any disputes that may exist among the insurers are simply ancillary to the primary issue of the rights and obligations set forth in the liability insurance contracts.

USF & G, Hartford, Federal, and Fireman's Fund each oppose the Motion to Realign the parties. The insurers contend that the proper test for realignment under *Indianapolis* is whether a "collision of interests" exists between the opposing parties. Under that test, realignment is proper only if no substantial controversy exists between a plaintiff and a defendant. The focus of the Court belongs on the areas of conflict, not the areas of commonality.

The insurers each assert that a determination of the proper allocation of defense costs among themselves constitutes an actual, substantial conflict sufficient to defeat a motion for realignment. USF & G notes that both it and Federal have declined to defend A & S with respect to the underlying action pertaining to the Maryland Sand and Gravel Site. In contrast, Hartford is currently defending A & S in connection with that action. In this action for declaratory judgment, USF & G asks this Court to determine the scope of its rights and obligations not only with respect to A & S, but also to the other insurance providers.

In light of the dearth of available precedent in the Fourth Circuit on the issue of realignment, an examination of the reasoning of other Circuit Courts is instructive.

The Third Circuit has recently considered this precise issue in a case with a similar fact pattern. In *Employers Insurance of Wausau v. Crown Cork and Seal Co.*, 942 F.2d 862 (3d Cir.1991), plaintiff Wausau was one of several insurance companies that insured Crown. Crown brought a declaratory action in state court against its insurers regarding their duty to defend Crown in response to a charge of improper waste disposal. Wausau filed a federal action against Crown and the other insurers seeking a declaration of the scope and nature of the obligations that it and the other insurers owed to Crown. Crown then moved to realign the parties since all the insurers had a common interest in avoiding liability for either the defense or indemnification of Crown.

The district court realigned the parties and dismissed the case for lack of subject matter jurisdiction, and the Third Circuit subsequently affirmed. The Third Circuit reasoned that despite the different theories that the various insurers might advance to avoid coverage, they were united in a common goal of avoiding obligation to Crown.

The Sixth Circuit recently examined the issue of realignment in another similar fact pattern in *U.S. Fidelity and Guar. Co. v. Thomas Solvent Company*, 955 F.2d 1085 (6th Cir.1992). In that case, a insurer filed a declaratory judgment action to determine its rights and liabilities in an underlying envi-

ronmental litigation involving several insureds. It also sought contribution from other insurers.

In affirming the district court's decision to realign the parties, thereby destroying diversity jurisdiction, the Sixth Circuit identified the primary issue as whether the insurers had a duty to indemnify any of the insureds. *Id.* at 1089. Although the Court recognized that an actual, substantial conflict existed between the insurance companies as originally aligned, it held that alignment must follow the primary dispute in the controversy. Only after the Court ruled on the primary issue of the insurers' duty to indemnify would the contribution issue arise, if at all. *Id.*

This Court finds the reasoning of the Third and Sixth Circuits in interpreting the *Indianapolis* language literally to be directly on point and persuasive. In this case, the primary issue is whether the insurers owe A & S a duty to defend and/or indemnify it for the underlying environmental lawsuits. USF & G itself in its Complaint describes as the purpose of the action:

> [to] determin[e] questions of actual controversy between the parties and constru[e] the rights and legal relations arising from certain contracts of liability insurance issued separately to A & S by USF & G, Federal, and Hartford to defend and indemnify A & S under these policies with regard to claims made by the United States Environmental Protection Agency ("EPA") concerning a hazardous waste site known as the Maryland Sand, Gravel and Stone Site located in Elkton, Cecil County, Maryland (the "Site").

Complaint ¶ 1.

Although some parties have filed counterclaims and/or cross claims for contribution from other insurers, courts do not generally look to counterclaims and cross-claims to determine the primary issue of a dispute. Instead, the Court must examine the plaintiff's principal purpose for filing its suit. *Zurn Industries,* 847 F.2d at 237. Whatever disputes may exist among the insurers regarding contribution are merely ancillary to the central issue of the duty to indemnify. The insurers are united in their opposition to A & S.

### Conclusion

For the reasons set forth in this memorandum opinion, this Court will grant defendant A & S's Motion for Realignment and to Dismiss the Complaint and Crossclaim. Therefore, all other pending motions in this case are moot.

It will be so ordered.

### ORDER

Upon consideration of defendant A & S's Motion for Realignment of the Parties and to Dismiss the Complaint and Cross-claim of Federal Insurance Company, this Court will grant A & S's Motions.

Therefore, IT IS this 2nd day of December, 1993, by the United States District Court for the District of Maryland, hereby ORDERED:

1. That defendant A & S's Motion for Realignment and to Dismiss BE, and the same hereby IS, GRANTED.

2. That all other pending motions in the above captioned case are MOOT.

3. That the Clerk of the Court CLOSE this case.