**Oscar BEKOFF et al., Plaintiffs,**

v.

**R. P. CLINTON et al., Defendants.**

**No. 72 Civ. 1880.**

United States District Court,
S. D. New York.

June 8, 1972.

As Amended June 13, 1972.

Berman & Zivyak, New York City, for plaintiffs.

Burke & Burke, New York City, for defendants; Mark D. Geraghty, Adrian A. Colley, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

On April 18, 1972, Mr. R. P. Clinton brought suit in the District Court of Butler County, Kansas, against Clinton Oil Company (of which R. P. Clinton appears to be chief executive officer) seeking a declaratory judgment as to the legal force and effect of certain pledge arrangements under which R. P. Clinton and others had put up stock as security for loans. The action was instituted with a view to avoiding publicity to the fullest extent possible. In a letter to the directors of the Company, R. P. Clinton wrote:

> "My counsel recommended that the action be filed in Butler County rather than in Wichita [the Company's principal place of business] to avoid any publicity concerning litigation involving Clinton Oil Company. In that connection, the court has ruled that the court file itself shall be held on a confidential basis for the parties. Counsel also feel that the case can be expedited in that court. Rest assured that I will not give any information concerning this litigation or the fact that an action has been filed to the news media. My purpose is to avoid publicity that might be unfavorable to the company. If news of this action is released, it will come from some other quarter."

On the day of the filing of that action the Butler County Court signed an order restraining the Company, its directors, agents and employees, "from commencing any suit or action in any other court to obtain any judgment upon or to foreclose upon any collateral instrument, security instrument or account or debt which is the subject of or similarly situated to those set out in the plaintiff's action, and from doing any other act to interfere with the jurisdiction of this Court or the orderly determination of the rights of the parties and the matters in controversy in this action."

On May 5, 1972, the instant suit was filed. Plaintiffs allege that they are shareholders of Clinton Oil Company, having acquired their Clinton shares as a result of the merger of Real Petroleum Company, in which they formerly held stock, into Clinton. Some of the plaintiffs are also directors of Clinton. Clinton Oil Company, R. P. Clinton, other officers and directors of Clinton Oil Company, and an accounting firm are named as defendants. In its first count, the complaint invokes this court's exclusive jurisdiction under Sections 10, 14

and 27 of the Securities Exchange Act of 1934. It charges that proxy statements to the shareholders of Real and Clinton, issued to achieve approval of the merger, were false and misleading in that they told of R. P. Clinton's indebtedness to the Clinton Oil Company and the collateralization thereof without reporting the denial or serious doubt as to such liabilities now reflected by the Butler County suit. Other charges of false and misleading statements are also made, but they are not important here.

A second count, invoking this court's pendent jurisdiction, takes an alternative, possibly contradictory line. It alleges R. P. Clinton's indebtedness to Clinton Oil Company and the collateralization. It charges that those controlling the Company are failing and refusing to enforce R. P. Clinton's obligations. It seeks judgment against him derivatively on behalf of the corporation.

A third count, against Clinton Oil Company, charges that loans to the Company's officers, extended for purchases of its shares, are secured by the very same shares (and other securities similarly affected). It charges that the Company's failure to enforce these obligations results in a number of its shares not being fully paid in accordance with law.

The action here is brought as a class suit. Various forms of specific and compensatory relief are sought.

On May 10, 1972, R. P. Clinton obtained from the Butler County Court an order requiring plaintiffs herein to show cause why they should not be held in contempt of that Court's order of April 18. The "Accusation in Contempt" upon which that order was made charged that the bringing of the instant suit was "in contemptuous disregard of [the Kansas Court's] Order of April 18, 1972, [and] in disrespect of [that] Court and its process * * *."

The next round in the artillery exchange was fired here. Plaintiffs herein moved by order to show cause to stay R. P. Clinton "from prosecuting [said] motion to punish the plaintiffs [herein] * * * for contempt in * * * Kansas and further staying said R. P. Clinton from taking any other actions in said proceeding to inhibit the prosecution of this action * * *." The papers supporting this motion contain some fierce language; they label the Kansas suit a "complete charade," refer to R. P. Clinton's expressions indicating a favorable disposition toward him of that tribunal, and charge that the proceeding there is not genuinely adversary.

Expanding upon the quoted language of their order to show cause, plaintiffs here seek ultimately to stay altogether the Kansas suit—at least to the extent that "any further steps [there] * * * would inhibit the prosecution of this action." The full reach of their effort is expressed in the proposition that this court should stop proceedings in Kansas that might "have a substantial collateral estoppel effect on the very issues which are presented in the plaintiffs' Exchange Act claims." If that were the whole story, the motion here would be swiftly denied, and the Kansas plaintiffs allowed to proceed in entire freedom, under the command of 28 U.S. C. § 2283 as lately construed and applied in Vernitron Corporation v. Benjamin, 440 F.2d 105 (2d Cir.), cert. denied, 402 U.S. 987, 91 S.Ct. 1664, 29 L.Ed.2d 154 (1971).

But the efforts of R. P. Clinton in Kansas to use a state court restraint and contempt as deterrents against resort to the federal court present another and still developing story.

On May 22, 1972, the Kansas State Court held a hearing, the exact dimensions of which are not certain from the materials here, and found that the plaintiffs herein had "failed to show cause why they they should not be charged with indirect civil and criminal contempt." It found that these persons "may have acted in willful disobedience" of the April 18 order "and may have performed acts and uttered statements disparaging of the Kansas Court, its

proceedings and orders, including declarations that [such] proceedings * * * are a 'complete charade' and that the District Court of Butler County is a 'kangaroo court', and litigants [in the case there] * * * can, in effect, manipulate the Court and the outcome of that litigation."[1] Continuing, the Kansas Court found:

"Portions of the evidence suggest that other directors, officers or employees of Clinton Oil Company, not presently identified, may have cooperated or acted in concert with those accused."

The Court then tentatively set the matter of "indirect civil and criminal contempt" for further hearing on June 15, 1972. It said it "solicits and will consider the suggestions of counsel on matters of procedure."

On May 31, the Kansas Court issued a document entitled "Specification of Charges for Civil and Criminal Contempt and Order." It does not appear here what proceedings, if any, had intervened between the May 22 hearing and this document or who, if anyone, may have participated. This document states that the first count of the complaint in this court will not serve as grounds for contempt in Kansas because this alleges matters within the exclusive federal jurisdiction. Counts two and three, however, are found to involve precisely, or largely, the subjects pending in Kansas, and are thus found to ground charges of contempt there. Also, plaintiffs here are charged with contempt because of "making and filing an affidavit addressed to" this court "which contained statements disparaging and contemptuous of the [Kansas] Court and its proceedings * * *." This is charged as "indirect criminal contempt." Other

charges of contempt are similar. Answers are required by June 15, 1972. Counsel are asked to advise whether a jury trial is required. A further hearing is set for June 15, at which time a trial date is to be set.

■ Mr. R. P. Clinton and the other defendants here invoke 28 U.S.C. § 2283 [2] as a bar to the injunction now sought against the Kansas contempt proceeding. As has been mentioned, this court would not hesitate to acknowledge the power of the Kansas Court to proceed with its lawsuit, and we would reject promptly any effort to impede that proceeding by any sort of restraint issuing from here. What R. P. Clinton overlooks, however, and has evidently led the Kansas Court to overlook, is that § 2283 embodies on the national level a deep *and reciprocal* policy of our federalism:

"Early in the history of our country a general rule was established that *state and federal* courts would not interfere with or try to restrain *each other's* proceedings." Donovan v. City of Dallas, 377 U.S. 408, 412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964) (emphasis added).

In enforcement of that vital principle, it is clear that the right to sue in the federal court, having been "granted by Congress," "cannot be taken away by the State." *Id.* at 413, 84 S.Ct. at 1583. More specifically, it is clear that the courts of Kansas are "without power to take away this federal right by contempt proceedings or otherwise." *Id.* at 413–414, 84 S.Ct. at 1583.

■ Accordingly, given the unquestioned jurisdiction of this court in the instant case,[3] the Kansas Court has been led by Mr. Clinton to exceed its powers

---

1. The reference to a "kangaroo court" was apparently made in a conversation out of court between one of the plaintiffs here and an attorney in Kansas.

2. "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where

necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

3. While conceding our jurisdiction, defendants predict they will move for transfer of this case to the District of Kansas. That is their privilege, of course, but it does not affect the problem now before us.

by purporting to enjoin, and then to threaten civil and criminal contempt sanctions against, actions taken within the exclusive and pendent jurisdiction of this court. " * * * [Congress] has in no way relaxed the old and well-established judicially declared rule * * * that state courts are completely without power to restrain federal-court proceedings in *in personam* actions like the one here." *Id.* at 412–413, 84 S.Ct. at 1582. The instant case is a clearer one against the asserted state power than was *Donovan v. City of Dallas.* Here, both the state and federal suits are at threshold stages; in *Donovan,* the federal suit had the powerfully arguable "effect of thwarting a state-court judgment already rendered * * *" (*id.* at 415, 84 S.Ct. at 1583, dissent), but even that was held insufficient to justify the state injunction.

Given the plain and recent pronouncements of *Donovan,* the instant case appears to be in the limited class in which the federal court not only may, but should, apply the exception in § 2283 allowing injunctions against state proceedings where "necessary in aid of [the federal] jurisdiction * * *." It hardly comports with either the dignity or the practical effectiveness of that jurisdiction to say we must stand idly by while pleadings and affidavits filed with us are dissected as grounds for contempt proceedings in a state court. It is not necessary to share for this quite different lawsuit the enthusiasm with which the plaintiffs before us, overlooking more pertinent authorities like *Donovan, supra,* invoke the doctrine of Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct.

1116, 14 L.Ed.2d 22 (1965). It seems fair, though, to say that the federal court's functioning is impaired if the litigants, upon whom the court must rely for light in our system, are "chilled" by the threat of punishment because their submissions in federal court documents must run such a gauntlet of punitive scrutiny as R. P. Clinton has arranged in Kansas. This is a situation where injunctive relief is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970).[4]

Counsel for R. P. Clinton have argued here that the Kansas contempt proceeding is out of his hands, that the Kansas Court has now taken charge of the project of vindicating its own dignity and authority. With deference to all—and not least to our distinguished colleague in Kansas—we may be permitted to pause over that. Busy courts—in Butler County, Kansas, or the Southern District of New York—have more to do than take up arms against civil litigants accused of error in construing a court order during a business struggle. More importantly, as the Kansas Court reflected, we are gaited and organized to rely upon the litigants and their counsel both to move us and instruct us. But that, in any event, is not the decisive point. As counsel for R. P. Clinton also argue, and correctly, the prohibition in § 2283 cannot be "avoided by directing the injunction solely to a party as distin-

---

4. This court is aware, of course, that *Donovan v. City of Dallas* did not involve a federal injunction against a state proceeding. There, in fact, without recounting the details, we note that a federal court stood aside after the state court issued the injunctive order later held to be invalid. But we now have the ultimate teaching of *Donovan* before us. We know that what the Kansas court has been led to do in this case goes beyond its powers. There is no just purpose whatever in leaving the plaintiffs before us exposed to the ordeal of contempt proceedings. And there is, above all, the hobbling effect of the Kansas contempt proceeding upon the uninhibited exercise of rights and powers assigned by the Congress to this forum. In all these circumstances, it seems a clear and compelling next step from *Donovan* to enforce the paramount federal law by granting the relief plaintiffs seek herein.

guished from the state court * * *." Studebaker Corporation v. Gittlin, 360 F.2d 692, 696 (2d Cir. 1966). By the same token, if the case is one for an exception, we must face the fact that what we are driven to do is in the end to "grant an injunction to stay proceedings in a State court * * *."

This does not mean, of course, that we should or will do more than enjoin R. P. Clinton. It does mean that this should be sufficient to remedy the difficulty we confront.

Accordingly, R. P. Clinton, and those acting with or for him, will be enjoined from prosecuting further the motion in the District Court of Butler County, Kansas, to punish any of the plaintiffs herein for contempt on the basis of any pleadings or submissions or other steps in the bringing or prosecution of the instant action.

Settle order on one day's notice.