**Complaint of COSMOPOLITAN SHIPPING COMPANY, S. A., as owner of the 26,650 GROSS TON OIL TANKER CLAUDE CONWAY for Exoneration from or Limitation of Liability in a Cause of Limitation Civil and Maritime.**

No. 77 Civ. 1425.

United States District Court,
S. D. New York.

May 23, 1978.

Dué, Dodson & deGravelles, Baton Rouge, La., by Richard J. Dodson, Baton Rouge, La., Harvey F. Gerber, New York City, for Matascone claimants.

Eaton, Van Winkle, Greenspoon & Grutman, New York City, by Norman Roy Grutman and Gary A. Woodfield, New York City, for Public Administrator.

OPINION

ROBERT L. CARTER, District Judge.

On March 20, 1977, the S.S. Claude Conway sank off the coast of the United States, and one Franco Matascone, an Italian citizen, was killed. The owners of the ship instituted a limitation proceeding in this court pursuant to 46 U.S.C. § 185, on March 23, 1977. In the course of that proceeding, a dispute arose as to who was the proper "personal representative" of Franco Matascone for purposes of prosecuting this action. The New York County Public Administrator claimed that he had been duly appointed by the Surrogate's Court of the County of New York as the personal representative of Franco Matascone and consequently that he was the proper party to bring this suit. On the other hand, the mother and father of the deceased, together with his brothers and sisters ("Matascone claimants")—all of whom are located in Italy—had designated counsel in this country and claimed that

they were the proper personal representatives of the deceased. The matter was argued to the court on February 17, 1978.

After reviewing the relevant authorities, the court issued an opinion on February 28, 1978, concluding that in order to qualify as a personal representative for purposes of prosecuting the federal causes of action here being asserted, see *Moragne v. States Marine Lines,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), 46 U.S.C. § 688 (Jones Act); 46 U.S.C. § 761 (Death on the High Seas Act), one did need to have "authority of some sort" from a court, see *Briggs v. Pennsylvania R. Co.,* 153 F.2d 841, 842 (2d Cir. 1942), but that ancillary letters of administration from the New York County Surrogate's Court were *not* necessary to so qualify. *See id.* at 842–43; *Iafrate v. Compagnie Generale Transatlantique,* 106 F.Supp. 619, 622 (S.D.N.Y.1952) (Weinfeld, J.). I held that the "just settlement," see *Briggs v. Pennsylvania R. Co., supra,* 153 F.2d at 843, called for in choosing between the competing candidates for the designation as Franco Matascone's personal representative in this litigation was to allow the Matascone claimants, or one of them, an opportunity to obtain proper authorization from an Italian court to represent the interests of Franco Matascone's beneficiaries specified under the different federal causes of action here asserted, at which time he or they would be designated as Matascone's personal representatives for purposes of this suit. The Matascone claimants were given sixty days to obtain such an authorization from the Italian courts.

On April 28, 1978, the New York County Public Administrator filed an Order to Show Cause in the Surrogate's Court of New York County seeking an order restraining counsel for the Matascone claimants from prosecuting any claim on behalf of Franco Matascone in the County of New York until they filed a petition for and received ancillary letters of administration from the New York County Surrogate's Court. Moreover, the proposed order sought to stay the prosecution of Franco Matascone's claim in this court until the Order to Show Cause was heard in the Surrogate's Court. Surrogate Lambert signed that Order to Show Cause, including the temporary stay, on April 28, and the matter was set down for a hearing on May 16, 1978.

On May 3, 1978, counsel for the Matascone claimants moved to extend their time to comply with this court's order of February 28, and that motion was granted on the same day. Two weeks later, on May 16, 1978, *Harvey Gerber,* local counsel for the Matascone claimants appeared before Surrogate Lambert and adjourned the hearing on the pending Order to Show Cause to June 6th. At that time, the Surrogate made clear that the temporary stay would be continued and that she would view any attempt by the Matascone claimants to seek protective relief in the federal courts as a violation of her order. This court was then informally notified of what had transpired in the Surrogate's Court and it is in this somewhat unusual posture that the question of what relief should be afforded the Matascone claimants, who are caught between the conflicting orders of two sovereigns, is now before us.[1] I conclude that

---

1. Subsequent to the court's having been notified informally of the proceedings before the Surrogate's Court via counsel for the Matascone claimants, Due, Dodson & deGravelles, Mr. Corn, of Surrogate Lambert's chambers, confirmed the fact that the Order to Show Cause here at issue was pending before the Surrogate. The court called in the interested parties to hold a hearing for purposes of ascertaining the facts surrounding the pending state court action.

At that hearing, on May 23, 1978, counsel for the Public Administrator, Mr. Grutman, of the firm of Eaton, Van Winkle, Greenspoon & Grutman, represented to the court that the purpose of the state proceeding was simply to clarify the fiduciary responsibilities of the Public Administrator in light of the expiration, or the impending expiration, of the time period for compliance with this court's outstanding order to the Matascone claimants to obtain proper authorization from the Italian courts to represent the interests of the deceased Matascone. The clear thrust of Mr. Grutman's remarks was that the proceeding before the Surrogate's Court was not directed at challenging the prior order of this court concerning the need, or lack thereof, of obtaining ancillary letters of admin-

the Public Administrator should be enjoined from pursuing his action in the Surrogate's Court and, moreover, should be ordered to discontinue that action.

In determining that an injunction should issue against the Public Administrator, I am, of course, aware of the proscriptions of the anti-injunction statute, 28 U.S.C. § 2283.[2] That statute provides that: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." The injunction here at issue is both necessary to protect and effectuate the earlier judgment of this court and is necessary in aid of this court's jurisdiction. Consequently it falls within the statutory exemptions provided to "assure that the federal courts and their judgments will not be eunuchized and that their muscularity will not be atrophied." *Donelon v. New Orleans Terminal Co.*, 474 F.2d 1108, 1114 (5th Cir. 1973); *accord, Chrysler Corp. v. E. L. Jones Dodge, Inc.*, 421 F.Supp. 969, 972 (W.D.Pa. 1976).

"The 'effectuate its judgments' exemption [from the provisions of the anti-injunction statute] was added in 1948 to permit a federal court to enjoin relitigation in a state court of a matter determined by a judgment of the federal court . . . ." *Samuel C. Ennis & Co. v. Woodmar Realty Co.*, 542 F.2d 45, 49 (7th Cir. 1976), *cert. denied*, 429 U.S. 1096, 97 S.Ct. 1112, 51 L.Ed.2d 543 (1977). "The relitigation exception . . . applies not only when the prior federal judgment is *res judicata* but also when the doctrine of collateral estoppel, or issue preclusion is relied upon." *Ibid.* And this exception from the statute applies to interlocutory orders as well as final decrees. *Sperry Rand Corp. v. Rothlein*, 288 F.2d 245, 249 (2d Cir. 1961).

In *Sperry Rand Corp. v. Rothlein, supra*, for example, a federal district court had issued an order that plaintiff should complete all discovery before defendants could begin theirs. When plaintiff completed its discovery, it initiated an action for injunctive relief in state court against a party intimately connected with the federal defendants and with the federal suit. The district court enjoined the plaintiff from utilizing the fruits of its federal discovery in the state suit, thereby, in effect, enjoining the state action. In holding that the order of the lower court did not violate the anti-injunction statute, the Second Circuit stated:

"[T]he district court decided . . . that the plaintiff was to be permitted to conclude its discovery before the defendants would begin theirs. . . . Had the defendants then sought to undermine that ruling . . . by immediately instituting discovery proceedings in a state court, the district court would have been protecting its judgment by enjoining the proceedings in the state court. Similarly, the portion of the same judgment which

istration from the Surrogate's Court in order to prosecute the federal causes of action here being asserted. However, even a cursory examination of the moving papers filed by the Public Administrator in the state court action specifically contradict the position taken by Mr. Grutman before this court. Thus, the Order to Show Cause before the Surrogate's Court states that counsel for the Matascone claimants are ordered to show cause "why an order should not issue restraining [them] from prosecuting any claim on behalf of the estate of Franco Matascone, or any of his dependents, beneficiaries or fiduciaries within the County of New York *unless and until petition is duly made to this Court upon a proper showing for the issuance of Ancillary Letters of Administration* . . . ." Order to Show Cause, *In the Matter of the Estate of Franco Marasconi* [sic],

No. 2856–1977 (Surrogate's Ct. New York County, filed April 28, 1977) (emphasis added). In light of the specific language of the Order to Show Cause, any claim that the purpose of the state court proceeding was other than to attack collaterally this court's prior determination is at best frivolous, and at worst misleading.

2. "[I]t is settled that the prohibition of § 2283 cannot be evaded by addressing the order to the parties," rather than to the court. *Atlantic Coast Line R. R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970). The instant injunction is directed at the litigants rather than the court simply to conform to the common practice in cases of this nature. *See Doe v. Ceci*, 517 F.2d 1203, 1206 n.3 (7th Cir. 1975).

calls for [the] discovery by the defendants after the plaintiff has taken its turn is protected and effectuated [by the lower court's order enjoining the defendant from using any discovered information in the state suit]." 288 F.2d 249.

In the present case, I ruled on February 28 that the Matascone claimants were to proceed to obtain authorization in the Italian courts to represent the interests of the deceased Matascone, and that upon presentation of that authorization, the Matascone claimants, or one of them, would be designated the "personal representative" of Franco Matascone for purposes of litigating this action. The Public Administrator now seeks to undermine that decision by obtaining an order from the Surrogate's Court enjoining counsel for the Matascone claimants from proceeding in this action in any manner until they apply and receive ancillary letters of administration from the Surrogate's Court—letters which I explicitly ruled were unnecessary. This is a clear case where an injunction is warranted to protect the earlier determination of this court. The " 'net result' " of Surrogate Lambert's Order is that the Matascone claimants are " 'prevented from complying with the decree of this court in accordance with its terms.' " *Doe v. Ceci*, 517 F.2d 1203, 1206 (7th Cir. 1975), *quoting N.L.R.B. v. Sunshine Mining Co.*, 125 F.2d 757, 760 (9th Cir. 1942). Under these circumstances, it is clear that a state proceeding can be enjoined. *See Doe v. Ceci, supra; Sperry Rand Corp. v. Rothlein, supra.*

In addition, injunctive relief is proper in the present case because it is "necessary in aid of [the court's] jurisdiction," 28 U.S.C. § 2283, and, therefore, falls within the second exemption from the proscriptions of the anti-injunction statute. The policy underlying the statute is "*reciprocal*" in nature. *Bekoff v. Clinton*, 344 F.Supp. 642, 645 (S.D.N.Y.1972) (Frankel, J.) (emphasis in original). As the Supreme Court stated: "Early in the history of our country a general rule was established that *state and federal* courts would not interfere with or try to restrain *each other's* proceedings." *Donovan v. City of Dallas*, 377 U.S. 408,

412, 84 S.Ct. 1579, 1582, 12 L.Ed.2d 409 (1964) (emphasis added); *accord, Bekoff v. Clinton, supra*, 344 F.Supp. at 645. And beyond this policy of restraint, there is a "well-established judicially declared rule," *Donovan v. City of Dallas, supra*, 377 U.S. 412–13, 84 S.Ct. 1579, that "the right to sue in the federal court, having been 'granted by Congress,' 'cannot be taken away by the State.' " *Bekoff v. Clinton, supra*, 344 F.Supp. at 645, *quoting Donovan v. City of Dallas, supra*, 377 U.S. at 413, 84 S.Ct. 1579. Thus, the courts of New York are "without power to take away [a] federal right [to bring suit] by contempt proceedings or otherwise." *Donovan v. City of Dallas, supra*, 377 U.S. at 413–14, 84 S.Ct. at 1583; *accord, Bekoff v. Clinton*, 344 F.Supp. 645.

In the case at bar, Surrogate Lambert has violated both this policy of restraint as well as the judicial rule of law by ordering the Matascone claimants to desist from prosecuting this action and to refrain from seeking protective relief in this court upon pain of being held in contempt. It is clear that both the Matascone claimants and the Public Administrator are seeking to assert federal causes of action over which this court has jurisdiction and it is for this court to determine which of them is the proper party to bring suit. Thus, the present situation is one in which "injunctive relief is 'necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.' " *Bekoff v. Clinton, supra*, 344 F.Supp. at 646, *quoting Atlantic Coast Line R.R. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 26 L.Ed.2d 234 (1970). Under these circumstances injunctive relief is clearly warranted.

Having concluded that the proposed injunction is not proscribed by 28 U.S.C. § 2283, it is clear that the court is empowered to issue such an injunction under the All Writs Statute, 28 U.S.C. § 1651, which provides that a court "may issue all writs necessary or appropriate in aid of [its] jurisdiction . . . ." And this statute has

been interpreted to authorize the issuance of injunctions to protect and effectuate the judgments of the federal courts. *See, e. g., Ward v. Pennsylvania, New York Central Transportation Co.*, 456 F.2d 1046 (2d Cir. 1972); *Baker v. Gotz*, 415 F.Supp. 1243 (D.Del.), *aff'd*, 546 F.2d 415 (3rd Cir. 1976).

Accordingly, upon submission of an appropriate order, the Public Administrator for the County of New York will be enjoined from prosecuting his action in the Surrogate's Court and, moreover, will be ordered to discontinue that action.

Settle Order on Notice.