Norman M. BRUCE, et al., Plaintiffs,

v.

Thomas A. MARTIN, et al., Defendants.

No. 87 Civ. 7737 (RWS).

United States District Court, S.D. New York.

Feb. 8, 1988.

Beigel & Sandler, P.C., New York City by Herbert Beigel, of counsel, for plaintiffs.

Spengler, Carlson, Gubar, Brodsky & Frischling, New York City by Robert S. Carlson, Richard P. Swanson, Jennifer B. Kurtz, of counsel, for defendants.

## OPINION

SWEET, District Judge.

Plaintiffs have moved under Fed.R.Civ.P. 15(a) and 21 for an order granting leave to amend their complaint to add additional defendants and under Fed.R.Civ.P. 65 for an order enjoining defendants Kinderhill Corporation, Kinderhill Select Bloodstock, Inc., Kinderhill Financial Services, Kinder-hill Investment Co. (collectively, "Kinderhill"), Thomas A. Martin ("Martin") and the proposed additional defendants from taking any action to prosecute collection suits based on promissory notes other than as a counterclaim or other action in this court. Oral argument was held on the motions on January 29, 1988. Upon the findings and conclusions set forth below, the motions for a preliminary injunction and to amend the complaint are granted.

### The Parties

The plaintiffs are investors from fifteen states in one or more limited partnerships involving thoroughbred horses and related assets. Defendants Kinderhill Corporation and Thomas A. Martin served as the general partners of the twenty-five limited partnerships in which plaintiffs invested and which plaintiffs now seek to add as defendants. Defendants National Union Fire Insurance Company ("National") and Reliance United Pacific Surety Managers, Inc. acted as sureties and issued certain guarantee bonds in connection with borrowing by the limited partnerships.

### The Limited Partnerships

The plaintiffs purchased their interests in the limited partnerships between 1980 and May 1986 pursuant to private placement memoranda prepared and distributed by Kinderhill. The memoranda included the partnership agreement, the subscription agreement, a promissory note to be signed by each investor, a purchaser questionnaire, a copy of a tax opinion, a summary of financial results of prior partnerships and an application for a financial guarantee bond, as well as an indemnification and pledge agreement to be signed by each limited partner. The business of each partnership was to breed mares, to raise and sell the offspring and, in some cases, to race the offspring. Each partnership had a stated term of approximately 5½ years.

Typically, an investor purchased a "unit" in a limited partnership for $60,000, of which $30,000 was paid in cash within 12 months after the investment and the remaining $30,000 was represented by a promissory note payable to the partnership upon the scheduled termination date. Dur-

ing the first two years of each partnership's existence, each limited partner was entitled to deduct from his personal income taxes his pro rata share of the operating losses, including interest expenses and depreciation, associated with the partnership business.

In late 1986, the limited partnerships were the subject of an exchange offer whereby the limited partnership assets were transferred to a new corporation, defendant Kinderhill Select Blood Stock, Inc. ("Kinderhill Select"). In return, the limited partnerships received common stock in Kinderhill Select. Martin is the president, chief executive officer and controlling shareholder of Kinderhill Select.

*The Complaint*

On October 29, 1987, the plaintiffs filed a complaint against Kinderhill, Martin and National which they amended on December 14, 1987 to add additional plaintiffs and Reliance as a defendant. The proposed second amended complaint (the "Complaint") makes no substantial changes to the original other than to add the limited partnerships as defendants.

The Complaint alleges that Martin and Kinderhill engaged in a fraudulent "pyramid" or "ponzi" scheme that consisted in part of the following: (1) excessive interpartnership transactions in which partnership assets would be sold to newly formed partnerships at artificial prices for no reasonable business purpose and in such a way as to insulate the partnerships from actual public market forces; (2) siphoning funds from the limited partnerships to the defendants; and (3) successive pledging and assigning to banks promissory notes executed by limited partners and pyramiding the notes by using funds acquired from such assignments to acquire assets from existing limited partnerships under Martin's control, which assets were in turn pledged to banks for additional financing.

The Complaint alleges an additional nondisclosure that requires some explanation. In connection with the purchase of a partnership interest, each investor executed an indemnification and pledge agreement with one of two surety companies, National or Reliance. The sureties issued bonds guaranteeing collection of the notes in order to induce banks to extend credit to the limited partnerships. Each investor agreed to indemnify his respective surety should the surety pay the amount of the investor's note to the limited partnership. The Complaint alleges that Kinderhill and Martin did not disclose to the investors that the limited partnerships had agreed to indemnify the sureties for any losses the sureties would suffer as a result of the guarantee bonds they had issued. Thus, the Complaint asserts that the failure of any investor to pay his note would adversely affect every other investor, since the limited partnership would be liable for such a default pursuant to the undisclosed indemnification agreement.

Based on these allegations of a fraudulent scheme, the Complaint asserts claims under the Securities Exchange Act of 1934, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the New York Limited Partnership Act and common law principles. The Complaint seeks rescission of the plaintiffs' investments and a declaratory judgment that plaintiffs are not liable on the notes they executed.

*The Motion for a Preliminary Injunction*

In support of their motion for a preliminary injunction, the plaintiffs have submitted an affidavit by their attorney. The plaintiffs contend that Kinderhill, National, Reliance, and the proposed additional defendants—the limited partnerships—have threatened to file suits against plaintiffs because of the plaintiffs' alleged default on the notes. They assert that if the defendants are not enjoined from commencing separate collection suits in other forums, the plaintiff will be irreparably harmed by potentially inconsistent decisions and multiple vexatious and burdensome lawsuits and this court will lose its ability to render full, final and complete relief for all parties. Finally, the plaintiffs contend that enjoining defendants from commencing actions on the notes in other courts would not prejudice the defendants because they are free to assert their collection claims as counterclaims in this action.

In opposition to the motion for a preliminary injunction, the defendants have submitted the affidavit of Martin, a copy of a typical private placement memorandum distributed to limited partners, together with examples of the documents signed by limited partners, samples of audited financial statements for the limited partnerships that were distributed to the limited partners in each of the years 1980 through 1986, and a chart presenting data taken from the audited financial statements for the years 1981 through 1986 that depict, *inter alia*, the number of partnership mares for each year and the appraised value of such mares. Based on these documents, Kinderhill contends that the plaintiffs allegations are unfounded in fact and law and that at the very least the plaintiffs have failed to demonstrate that they are likely to prevail on the merits as required by their application for a preliminary injunction.

As to the plaintiffs' claim that Kinderhill engaged in excessive interpartnership transactions, Kinderhill claims that the possibility of such transactions was fully disclosed in the private placement memoranda, that each interpartnership transaction was fully disclosed in the annual audited financial statements, and that interpartnership sales of mares were consummated only at prices arrived at by averaging three prices set by nationally known appraisers. Kinderhill contends that interpartnership transactions based on such prices were lawful and avoided commissions that both sides would have been required to pay if the transactions had taken place on the open market.

Kinderhill replies to the plaintiffs' charge that partnership funds were siphoned off to defendants by claiming that, as set forth in the financial statements, Kinderhill and Martin received only the management and other fees disclosed in the offering memoranda and authorized by the partnership agreements. Similarly, Kinderhill contends that the pledging and assignment of investor promissory notes to banks and the pledging of assets acquired with the funds of those financings constitutes a lawful business practice that was fully disclosed in the offering memoranda.

Finally, Kinderhill claims that the limited partnerships *per se* have not agreed to indemnify the sureties. However, Kinderhill's reasons for opposing the injunction reveal an arrangement that produces substantially the same result as if the limited partnerships had agreed to indemnify the sureties.

According to Kinderhill, each partnership has a multi-million dollar bank debt. The only assets of each partnership are the shares of common stock in Kinderhill Select it acquired in exchange for its bloodstock assets and the notes receivable from the limited partners. The sole assets each partnership has to service its bank debt are (1) the semi-annual payments of interests for which each investor is obligated and (2) ultimately, the payment of the principal amount of each investor note. Should the sureties be called upon to pay that bank debt, the sureties, in turn, will call upon Kinderhill Corporation and Martin, who concede that they have agreed to indemnify the sureties. Defendants contend that Kinderhill Corporation and Martin are financially unable to indemnify the sureties by, in effect, paying the plaintiffs' note obligations to the partnerships and that such failure would constitute a default by Kinderhill Select and by the limited partnerships under certain loan agreements and would precipitate their demise. Should Kinderhill Select fail, the limited partnerships' sole remaining assets—their shares of the common stock of Kinderhill Select—will become worthless. Defendants assert that hundreds of limited partners who are not party to this suit will, therefore, suffer harm if the plaintiffs are able to avoid payment of their notes as scheduled.

*Compulsory Counterclaims under Fed.R. Civ.P. 13(a)*

Insofar as the defendants' counterclaims for collection on the notes arise "out of the transaction or occurrence that is the subject matter of" the plaintiffs' actions, they

are compulsory under Fed.R.Civ.P. 13(a).[1] Rule 13(a) bars a party who fails to assert a compulsory counterclaim in one action from instituting a second action in which that counterclaim is the basis of the complaint. *See Southern Constr. Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). In order to enforce this bar, a federal court may enjoin a party from bringing its compulsory counterclaim in a subsequent federal court action. *See Seattle Totems Hockey Club, Inc. v. National Hockey League,* 652 F.2d 852, 854 (9th Cir.1981); *Warshawsky & Co. v. Arcata National Corp.,* 552 F.2d 1257 (7th Cir. 1977); *Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620 (D.C.Cir. 1975).

This case presents the issue whether a federal court may enjoin a party from bringing its compulsory counterclaim in a subsequent state court action.[2] If a collection suit on the notes were already pending in state court, the Anti–Injunction Act, 28 U.S.C. 2283, would bar such an injunction.[3] However, the parties agree that the Anti–Injunction Act does not bar the requested relief since the defendants have not yet commenced any suits in state court. *See In re Baldwin–United Corp.,* 770 F.2d 328, 335 (2d Cir.1985). Therefore the availability of an injunction in this case will be determined by traditional standards for injunctive relief.

*Standards for Injunctive Relief*

An applicant for preliminary injunctive relief seeks "an extraordinary and drastic remedy which should not be routinely granted." *Medical Soc. of State of New York v. Toia,* 560 F.2d 535, 538 (2d Cir. 1977). The Court of Appeals for this Circuit has recently reiterated the formidable showing that such an applicant must make:

(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief.

*Hanson Trust PLC v. ML SCM Acquisition, Inc.,* 781 F.21 264, 273 (2d Cir.1986).

The plaintiffs assert that they will suffer irreparable injury if they are subjected to vexatious litigation in multiple forums. That each limited partner may be required to defend a collection suit based on his promissory note, however, falls short of demonstrating irreparable injury. In considering requests for injunctive relief, courts have routinely followed the Supreme Court's holding in *Renegotiation Board v. Bannercraft Clothing Co.,* 415 U.S. 1, 24,

---

**1.** The purpose of Rule 13(a) is "to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters." *Southern Constr. Co. v. Pickard,* 371 U.S. 57, 60, 83 S.Ct. 108, 110, 9 L.Ed.2d 31 (1962). The Supreme Court has defined the term "transaction" broadly to "comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). Since the plaintiffs issued the notes to the limited partnerships in connection with the purchase of partnership units, which investments plaintiffs now seek to rescind, the dispute as to whether under state and federal law plaintiffs remain obligated to pay the notes arises out of "common matters" pertaining to the limited partnerships.

**2.** In *Roth v. Bank of the Commonwealth,* 583 F.2d 527 (6th Cir.1978), the Fifth Circuit held that the Anti–Injunction Act prevents a federal district court from enjoining the prosecution by the federal court defendant of *in personam* state actions where those actions were commenced after the institution of the federal suit but be-

fore the preliminary injunction was issued. In reversing the district court, the Court declined to follow *Barancik v. Investors Funding Corp.,* 489 F.2d 933 (7th Cir.1973), in which the Seventh Circuit held that the Anti–Injunction Act did not bar an injunction against suits filed in state court while a motion for an injunction was pending decision in the district court. Here, the conflict between the circuits need not be addressed because no actions have yet been filed in state courts, and Kinderhill has, as a courtesy to the court, has undertaken not to file such actions during the pendency of the instant motion.

**3.** *See Seattle Totems v. NHL,* 652 F.2d at 855 n. 5. Rule 13(a) has been held not to create an express statutory exception to the Anti–Injunction Act and, therefore, a federal court is barred by the Act from enjoining a party from proceeding in state court on a claim that should have been pleaded as a compulsory counterclaim in a prior federal suit. *See* 6 C. Wright & A. Miller, Federal Practice and Procedure, § 1418 at 106.

94 S.Ct. 1028, 1040, 39 L.Ed.2d 123 (1974), that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *See Rosenthal & Co. v. Bagley*, 581 F.2d 1258, 1262 (7th Cir.1978); *City of Parma, Ohio v. Levi*, 536 F.2d 133, 135 (6th Cir.1976); *In re Convertible Rowing Exerciser Patent Lit.*, 616 F.Supp. 1134, 1144 (D.Del.1985) (additional burden on counsel or need to obtain additional counsel do not constitute irreparable injury); *Citadel Trading Co. v. Bagely*, 440 F.Supp. 925, 927 (E.D.Mo. 1977).

However, the plaintiffs also suggest that they will suffer irreparable harm if the denial of an injunction results in inconsistent rulings in and among other courts as well as with this court. They assert that the failure to enjoin the commencement of other actions in order to protect this court's jurisdiction will jeopardize the court's ability to afford the parties full, final and complete relief. The plaintiffs point out that any subsequent collection suit will be met with the same defenses based on state and federal law asserted here, and that, therefore, an especially swift state court ruling as to such legal issues may be introduced as res judicata in this proceeding if it proceeds more slowly.[4]

To determine whether the risk of inconsistent and preemptive state court rulings on matters of federal law should be a factor in an irreparable injury inquiry, the court looks to cases interpreting language in both the Anti–Injunction Act and the All–Writs Act, 28 U.S.C. § 1651 (1982), that

permits a federal court to issue injunctions in aid of its jurisdiction.[5] In *In re Baldwin–United Corp.*, 770 F.2d 328, 335–36 (2d Cir.1985), the Court of Appeals for this Circuit examined the scope of the authority granted district courts under the All–Writs Act:[6]

> This provision permits a district court to enjoin actions in state court where necessary to prevent relitigation of an existing federal judgment, *see United States v. New York Telephone*, 434 U.S. 159, 172 [98 S.Ct. 364, 372, 54 L.Ed.2d 376] (1977); *SEC v. G.C. George Securities, Inc.*, 637 F.2d 685, 688 (9th Cir.1981), notwithstanding the fact that the parties to the original action could invoke res judicata in state courts against any subsequent suit brought on the same matters. *See Redac Project 6426, Inc. v. Allstate Ins. Co.*, 412 F.2d 1043, 1047–48 (2d Cir.1969). Even before a federal judgment is reached, however, the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such "federal injunction relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 [90 S.Ct. 1739, 1747, 26 L.Ed.2d 234] (1970) (dicta) (Anti–Injunction Act) (other citations omitted).

---

4. Although part of the plaintiffs' complaint arises under the federal securities laws and is cognizable only in federal court and, therefore, may not be subject to dismissal on grounds of res judicata, it is well-established that "where both the state and federal suits are based on the same transactions, collateral estoppel would apply with regard to the facts determined in the state action." *Abramson v. Pennwood Investment Corp.*, 392 F.2d 759, 762 (2d Cir.1968); *see Bernstein v. Mediobanca Banca di Credito*, 78 F.R.D. 1, 2 (S.D.N.Y.1978).

5. The All–Writs Act provides that federal courts may "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. 1651 (1982). Similarly, the Anti–Injunc-

tion Act provides that a federal "court may not grant an injunction to stay proceedings in a State court except ... where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. 2283 (1982).

6. In *Baldwin–United Corp.*, as here, the parties agreed that the Anti–Injunction Act, which bans injunctions against actions pending in state court, was not applicable since at the time of the injunction no suits were pending in state court. However, the Second Circuit expressly relied on cases interpreting the exception to the Anti–Injunction Act that permits injunctions "necessary in aid of [the federal court's] jurisdiction" in order to understand the meaning of the nearly identical language in the All–Writs Act. *See Baldwin–United Corp.*, 770 F.2d at 335.

Thus, a federal court may issue an injunction against the commencement of proceedings in state court in order to prevent state court interference with an earlier court order, *see Complaint of Cosmopolitan Shipping Co.*, 453 F.Supp. 268, 271 (S.D.N.Y. 1978), to prevent, in an in rem action, any state court proceeding affecting the res, *see Kline v. Burke Constr. Co.*, 260 U.S. 226, 229, 43 S.Ct. 79, 81, 67 L.Ed. 226 (1922), or to protect a judgment that is imminent in proceedings that have already exhausted considerable time and resources in the federal court. *See Baldwin–United Corp.*, 770 F.2d at 336.

This is not an action in rem or quasi in rem such that an injunction would be necessary to protect the court's authority to control and dispose of the res. *See Kline v. Burke Constr. Co.*, 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226 (1922). Because the Supreme Court has "never viewed parallel *in personam* actions as interfering with the jurisdiction of either" state or federal courts, *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 642, 97 S.Ct. 2881, 2893, 53 L.Ed.2d 1009 (1977), courts have declined to issue injunctions against pending in personam proceedings in state court on the grounds that an injunction was necessary in aid of their jurisdiction. *See Heyman v. Kline*, 456 F.2d 123, 131 (2d Cir.1972); *Vernitron Corp. v. Benjamin*, 440 F.2d 105, 108 (2d Cir.1971).

■ Here, the threat to the court's jurisdiction arises not from the prospect of parallel proceedings and the potential for a prior state decision to be asserted as res judicata. Rather, the potential harm to the court's jurisdiction arises from multiple actions in different states. A court of equity may grant an injunction to avoid multiple actions at law if the actions involve the same issues of law and fact so that the decisions in one action will be determinative of all. *See Lee v. Bickell*, 292 U.S.

415, 54 S.Ct. 727, 78 L.Ed. 1337 (1934); *Matthews v. Rodgers*, 284 U.S. 521, 52 S.Ct. 217, 76 L.Ed. 447 (1932).

■ At this stage of the proceedings, the court has not issued any orders, nor has it expended considerable time and resources attempting to resolve the dispute between the parties. Nevertheless, the Complaint raises substantial issues under the federal securities laws and RICO as well as under New York law. If the defendants are permitted to commence separate suits, some of which presumably may be outside New York,[7] the plaintiffs will be required to assert the same defenses under federal and state law that they have asserted as claims here. Prior rulings by state courts that decline to stay such actions may be introduced here to preclude this court from considering a given claim or factual issue. Under such circumstances, the commencement of numerous separate actions in state courts will so interfere with the proceedings in this court "as to seriously impair [this court's] flexibility and authority to decide" this case. *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295, 90 S.Ct. 1739, 1747, 26 L.Ed.2d 234 (1970). Accordingly, the plaintiffs have satisfied the irreparable injury standard by showing the destructive effect that scores of fragmented state actions on the issues raised here would have on this court's ability to afford the parties full, final and complete relief.[8]

It would be premature at this stage of the proceedings to offer any opinion on whether the plaintiffs have shown a likelihood of success on the merits. It suffices to say that the pleadings of the plaintiffs have shown sufficiently serious questions going to the merits to make them fair grounds for litigation and a balance of hardships tipping decidedly in their favor. *See Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738 (2d Cir.1953).

---

7. The plaintiffs are residents of New York, Missouri, Texas, California, Illinois, Massachusetts, Maryland, New Jersey, Wisconsin, Arizona, Oklahoma, Connecticut, Virginia, Delaware and Florida.

8. Courts have issued injunctions against proceedings in foreign courts where separate adjudications could result in inconsistent rulings and a race to judgment. *See Seattle Totems v. NHL*, 652 F.2d at 856; *Cargill, Inc. v. Hartford Acc. & Indem. Co.*, 531 F.Supp. 710, 715 (D.Minn.1982).

Paragraph 18 of the Complaint alleges the following examples of the alleged "ponzi" scheme carried on by Kinderhill and Martin:

(a) in 1985, the 1981 Series limited partnership earned $288,500 from the sale of bloodstock of which at least $250,-000 was earned from the sale of assets to another Martin controlled limited partnership. In addition, of $164,541 in stallion service income, at least $160,000 was generated from transactions with other Martin controlled limited partnerships;

(b) in 1984, the 1983 Series VI limited partnership earned $700,000 from the sale of bloodstock and stallion shares, all of which was derived from transactions with another Martin controlled limited partnership;

(c) in 1985, the 1983 Series I limited partnership earned $545,000 from the sale of bloodstock all of which was derived from transactions with other Martin controlled limited partnerships. In addition, all $15,000 of stallion service expenses was the result of transactions with another Martin controlled limited partnership;

.    .    .    .    .

(g) in 1984, the 1981 Series II limited partnership earned $155,933 from the sale of bloodstock of which at least $139,-500 was derived from transactions with other Martin controlled limited partnerships.

Plaintiffs' Proposed Second Amended Complaint at 11–12. At oral argument, counsel for plaintiffs represented that the limited partnership financial statements document these instances of interpartnership transactions. Plaintiffs are entitled to the opportunity to prove that such transactions were bereft of any reasonable business purpose, could not have been executed on the public market, and were intended primarily to en-rich the general partners at the plaintiffs' expense.

In addition, as discussed above, the defendants' own submissions indicate that Kinderhill Corporation and Martin entered into certain undisclosed indemnification arrangements that threaten the financial survival of the limited partnerships. The defendants' admission in this regard raises a serious question going to the merits of the plaintiffs' nondisclosure claims. Therefore, without intimating any views as to the likelihood that plaintiffs will prevail on the merits, the court finds that the plaintiffs have demonstrated substantial grounds for litigation.[9]

Finally, the balance of hardships favors the plaintiffs. Although they have chosen not to proceed as a class at this point in the litigation, the plaintiffs have shown a unity of interests in prosecuting their federal claims that would be severely undermined were they required to present the same claims separately as defenses in individual collection suits. An injunction will avoid the costs of obtaining counsel to appear and obtain a stay of, or if necessary, to proceed with litigation in state court. In addition, counsel for National has already agreed that National will assert as counterclaims in this action any claims against the Kinderhill limited partners who are plaintiffs in this suit.

For their part, the defendants have not shown that they will be prejudiced by the issuance of the requested injunction. As discussed, the defendants can attempt to collect on the notes by asserting counterclaims in this action.[10] The defendants have not expended any resources in prosecuting claims in state court that would be wasted by the requested injunction. Although the defendants claim that their inability to collect on the notes and pay the limited partnerships' debts may lead to the financial collapse of Kinderhill Select and all the limited partnerships, the defendants

---

**9.** The court takes notice of the defendants' allegation that the plaintiffs' claims have been filed in bad faith and will, of course, consider a motion for appropriate sanctions should the plaintiffs' claims prove wholly lacking in factual support.

**10.** In response to the court's inquiry at oral argument, counsel for defendants did not advance any reasons why this court would be an inconvenient forum in which to prosecute the collection claims.

have offered little support for their claim that an action to collect on the notes will proceed more slowly in this forum than actions not yet filed in state courts around the country. Indeed, it would appear that the converse would be more accurate.

For the reasons set forth above, the plaintiffs' motions are granted. Defendants Kinderhill, Martin, National, Reliance and the Kinderhill limited partnerships are enjoined from commencing any collection suits against the plaintiffs other than as a counterclaim or other action in this court. As required by Fed.R.Civ.P. 65(c), the plaintiffs shall post bond in the amount of $50,000, with leave granted to make a further application if necessary.

IT IS SO ORDERED.