724 F.Supp. 124 (1989)
Norman M. BRUCE, et al., Plaintiffs,
v.
Thomas A. MARTIN, et al., Defendants.
No. 87 Civ. 7737 (RWS).
United States District Court, S.D. New York.
October 12, 1989.
*125 Beigel & Sandler, Ltd., P.C., New York City (Bruce R. Rose, of counsel), for plaintiffs.
Maider & Smith, Gloversville, N.Y. (Robert L. Maider, of counsel), for defendants.

OPINION
SWEET, District Judge.
Defendant Lee & Mason International Agency, Inc. ("Lee & Mason") moves pursuant to Rule 12(b)(1), Fed.R.Civ.P., to dismiss the Third Amended Consolidated Complaint in Bruce v. Martin, 87 Civ. 7737, on the ground that this court lacks subject matter jurisdiction and on the further ground that there is a prior state court action pending between it and two of the Bruce plaintiffs that raises identical issues. For the reasons set forth below, the defendant's motion is granted.

The Parties
The Bruce plaintiffs number some 300 investors from fifteen states, each of whom purchased units in one or more limited partnerships involving thoroughbred horses and related assets. Of particular relevance to this motion are plaintiffs Bernard Taylor ("Taylor") and Norman Libowitz ("Libowitz"), who invested in a limited partnership denominated the Kinderhill Farm Breeding and Racing Program 1980 Series (the "Kinderhill 1980 Series Partnership").
The Bruce defendants include the twenty-five horsebreeding limited partnerships in which the plaintiffs purchased units, the general partners of those limited partnerships, and certain entities that acted as sureties and issuers of guarantee bonds in connection with borrowing engaged in by the limited partnerships. Defendants also include movant Lee & Mason, which is the holder by assignment of two promissory notes executed by plaintiffs Taylor and Libowitz in favor of the Kinderhill 1980 Series Partnership.

The Complaint
On October 29, 1987, the plaintiffs filed the original complaint commencing this action. The complaint, which has been subsequently amended and which is described with greater precision and detail in prior rulings in this proceeding, essentially alleges that the general partners engaged in a fraudulent "pyramid" or "ponzi" scheme. The alleged scheme is said to have involved excessive interpartnership transactions, siphoning of funds from the limited partnerships *126 to the general partners, successive pledging and assigning to banks of promissory notes executed by limited partners, and the pyramiding of the notes by using funds acquired from such assignments to acquire assets from existing limited partnerships, which assets were then in turn pledged to banks to obtain additional financing.
Based on these allegations of a fraudulent scheme, the complaint asserts federal claims under the Securities Exchange Act of 1934, the Securities Act of 1933, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and state-law claims under the New York Limited Partnership Act as well as common law principles. The complaint seeks rescission of the plaintiffs' investments and a declaratory judgment that plaintiffs are not liable on the notes they executed.
The Tenth Claim of the complaint, which is the only claim naming defendant Lee & Mason, alleges Lee & Mason is not a holder in due course of the Kinderhill 1980 Series notes that it purchased by assignment. The ground for that assertion is that Lee & Mason's president, John Ryan, had prior knowledge of the scheme set forth in the complaint by virtue of his association and dealings with the general partner defendants who are alleged to have masterminded that fraudulent scheme. On that basis, plaintiffs request a declaratory judgment that Lee & Mason is not entitled to any payment on the Kinderhill 1980 Series notes it holds.

Prior Proceedings and Related Facts
Lee & Mason purchased the promissory notes of Taylor and Libowitz in May 1987, some months prior to the filing of the original Bruce complaint in October 1987. Lee & Mason was not, however, named as a defendant in the original Bruce complaint.
By order of February 8, 1988, this court enjoined the then-named defendants in Bruce from commencing any collection suits upon the notes against the Bruce plaintiffs, other than as a counterclaim or other action in this court, in view of the destructive effect scores of fragmented state actions raising the same issues would have on this court's ability to afford the parties full, final and complete relief. See Bruce v. Martin, 680 F.Supp. 616 (S.D.N. Y.1988).
Lee & Mason, not yet a named defendant and hence not bound by that order, commenced an action in Maryland state court on April 22, 1988 against Bruce plaintiffs Taylor and Libowitz to recover under the promissory notes of those two plaintiffs that it had purchased in May 1987.
On September 28, 1988, the Bruce plaintiffs amended their complaint to name Lee & Mason as a defendant. Prior to that amendment, in August 1988 Taylor and Libowitz moved to dismiss the collection action brought against them in Maryland and also asserted as an affirmative defense in the Maryland action that Lee & Mason was not a holder in due course of their notes because of its knowledge of the fraudulent scheme described in the Bruce complaint.
On November 30, 1988, the Maryland court denied Taylor and Libowitz' motion to dismiss and on February 9, 1989, set the case down for trial in June 1989.
On April 29, 1989, Lee & Mason filed its motion to dismiss in the Bruce action, asserting that this court lacked subject matter jurisdiction over the dispute between it and plaintiffs Taylor and Libowitz, who are the only plaintiffs in Bruce whose notes are held by Lee & Mason. In the alternative, Lee & Mason argues that in view of the prior pending state court action, this court should refrain from exercising jurisdiction over the dispute. The motion was briefed by counsel for both parties. Oral argument was heard and the motion was considered fully submitted on June 30, 1989.

Pendent Party Subject Matter Jurisdiction
The Bruce action states a number of claims against the principal defendants that arise under the federal securities and racketeering laws. The claim asserted against defendant Lee & Mason  that it is not a "holder in due course" of the notes of Taylor and Libowitzis concededly *127 brought under state law, however, and so does not in itself present a basis for federal jurisdiction. As the sole claim in the action that names Lee & Mason, it also cannot be said to be pendent to any other federal law claim against that defendant.[1] Accordingly, if this court possesses subject matter jurisdiction to hear plaintiffs' state law dispute with Lee & Mason, it must be under the discretionary theory of "pendent party" jurisdiction. See generally 13B Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction (2d ed.) § 3567.2.[2]
Pendent party jurisdiction refers to a court's assertion of "jurisdiction over parties not named in any claim that is independently cognizable by the federal court." Finley v. United States, ___ U.S. ___, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). The exercise of jurisdiction over a "pendent party" is subject to greater constraints than the more common "pendent claim" jurisdiction because, as the Supreme Court has explained,
it is one thing to authorize two parties, already present in federal court by virtue of a case over which the court has jurisdiction, to litigate in addition to their federal claim a state-law claim over which there is no independent basis of federal jurisdiction. But it is quite another thing to permit a plaintiff, who has asserted a claim against one defendant with respect to which there is federal jurisdiction, to join an entirely different defendant on the basis of a state-law claim over which there is no independent basis of federal jurisdiction.
Aldinger v. Howard, 427 U.S. 1, 14-15, 96 S.Ct. 2413, 2420-2421, 49 L.Ed.2d 276 (1976).
Over a pendent claim, it is well established that federal courts have jurisdiction so long as its relationship to the substantial federal law claim in the action satisfies the Article III requirement that the "entire action before the court comprise[] but one constitutional `case.'" United States Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) (holding that requisite relationship exists when the federal and pendent claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them in one judicial proceeding").
In contrast, with respect to pendent party jurisdiction the Supreme Court has not indulged the assumption that "the full constitutional power has been congressionally authorized...." Finley, ___ U.S. at ___, 109 S.Ct. at 2006, 104 L.Ed.2d at 601. Thus, when considering the exercise of pendent party jurisdiction, a court must not only apply the Gibbs test to establish whether it possesses Article III power to adjudicate the nonfederal claim, but, as well, pay "careful attention to the relevant statutory language" granting jurisdiction over the federal claim. Aldinger, 427 U.S. at 17, 96 S.Ct. at 2421.[3] As Aldinger explained, the point of examining the statute conferring jurisdiction over the federal *128 claim is to determine whether Congress has "expressly or by implication negated" the existence of pendent party jurisdiction. Id., 427 U.S. at 18, 96 S.Ct. at 2422. If Congress has posed such a statutory obstacle, then a federal court obviously is without power to decide the dispute involving the pendent party.
If Aldinger is still the determinative standard, this court would have little difficulty finding that it has the requisite constitutional and statutory power to hear plaintiffs' claim against Lee & Mason. Without doubt, that claim shares with the federal claims a common nucleus of operative fact, since, like plaintiffs' federal securities claims, its success depends upon demonstrating the same web of events and facts that allegedly compose the fraudulent "ponzi" or "pyramid" scheme. Indeed, here the success of the claim against Lee & Mason is almost "logically dependent" upon the main claims brought against the principal defendants, cf. Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 376, 98 S.Ct. 2396, 2403, 57 L.Ed.2d 274 (1978) (considering stiffer ancillary jurisdiction requirement that claims be logically dependent), in that a prerequisite to establishing that Lee & Mason possessed knowledge of the fraudulent scheme is proof that such a scheme existed in the first place.
In view of the high degree to which these claims are factually, legally and logically related, it cannot be doubted that the claims are ones that a plaintiff ordinarily would be expected to try in a single judicial proceeding. See Gibbs, 383 U.S. at 725, 86 S.Ct. at 1138. Accordingly, for Article III purposes, the claim against Lee & Mason is part of an action making up "one constitutional case." Id.[4]
The second part of the inquiry required by Aldinger is whether Congress, in conferring federal court jurisdiction over the plaintiffs' federal claims, manifested an intention to exclude simultaneous consideration of state-law claims such as plaintiffs here seek to assert against Lee & Mason. That is a question that has been addressed previously by courts within this circuit considering the availability of pendent party jurisdiction in actions founded upon the federal securities laws. The more recent of those cases have held that Section 27 of the Securities Exchange Act of 1934 (the "'34 Act") does not exclude the bringing of related state-law claims involving pendent parties who are not parties to the pleaded '34 Act federal claims. See Weinberger v. Kendrick, 698 F.2d 61, 77 (2d Cir.1982) (Friendly, J.); Bolton v. Gramlich, 540 F.Supp. 822, 845 (S.D.N.Y.1982) (Sand, J.); see also Prudential-Bache Securities, Inc. v. Lisle Axis Assoc., 657 F.Supp. 190, 195-96 (N.D.Ill.1987) (following Weinberger). But cf. In re Investors Funding Corp. of New York Securities Litigation, 523 F.Supp. 550, 551 (S.D.N.Y.1980) (pre-Weinberger case finding no jurisdictional mandate to hear pendent securities-related claims); In re New York City Municipal Securities Litigation, 507 F.Supp. 169, 188 (S.D.N.Y.1980) (no pendent party jurisdiction over city under § 27 of '34 Act since cities excluded from substantive provisions of Act); Depaja Enterprises, Ltd. v. American Bank & Trust Co., 454 F.Supp. 413, 416-17 (S.D.N.Y.1978) (no pendent party jurisdiction over bank under § 27 of '34 Act, because banks excluded from substantive provisions of Act).[5]
Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, reads in pertinent part:
The district courts of the United States ... shall have exclusive jurisdiction of *129 violations of this chapter or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder....
Nothing in that broad granting language suggests a statutory obstacle to pendent party jurisdiction.[6] Nor have the parties pointed to any element within the broader statutory scheme of the '34 Act that would appear, either expressly or by implication, to exclude a specific party such as Lee & Mason from being haled into federal court as a pendent defendant. Cf. In re New York City Municipal Securities Litigation, 507 F.Supp. at 188 (finding municipalities are parties specifically excluded from Act's coverage); Depaja Enterprises, 454 F.Supp. at 416-17 (banks specifically excluded from Act's coverage). Here then, as was found true in Weinberger, Bolton, and Prudential-Bache, there appears to be no statutory barrier to assertion of pendent party jurisdiction over the dispute.
That much at least would seem clear but for the Supreme Court's decision this past term in Finley v. United States, ___ U.S. ___, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). The majority opinion in that case draws into question whether subject matter jurisdiction ever can exist over a pendent party absent "an affirmative grant" of such jurisdiction by Congress. Id., 109 S.Ct. at 2009. In Finley, a divided court held that pendent party jurisdiction did not afford a basis for a plaintiff bringing an action under the Federal Tort Claims Act ("F.T.C.A.") to assert state-law claims against a party who was not named as a defendant to the federal claim. That precise holding is of course limited to cases raising claims under the FTCA, and this obviously is not such a case. However, the manner by which the majority reached its result implicitly draws into question the viability of the approach to statutory interpretation set out in Aldinger, which in turn may signal the demise of pendent party jurisdiction in all but a handful of cases.
The Aldinger court did not presume that Congress disfavored pendent party jurisdiction absent the existence of statutory language expressly or impliedly disapproving of its exercise. In Finley, such a negative implication appears to have guided the Court's analysis of the statute under consideration. The Court began by noting that the F.T.C.A. confers federal jurisdiction "over civil actions on claims against the United States"  language that under the Aldinger approach would not necessarily be read to suggest that Congress wished federal courts hearing such claims to exclude from the "civil action" all related state-law claims. 109 S.Ct. at 2008 (majority opinion), 2010-11 (Blackmun, J., dissenting). The Finley Court then reasoned that in granting federal jurisdiction over "claims against the United States," Congress must have meant "the United States and no one else." 109 S.Ct. at 2008. Finally, it further observed that petitioner was not able to demonstrate that the Act's jurisdictional language anywhere suggested an "affirmative grant of pendent-party jurisdiction." Id. at 2009.[7]
*130 In post-Finley dictum, the Second Circuit has noted that "pendent party jurisdiction apparently is no longer a viable concept." Staffer v. Bouchard Transportation Co., 878 F.2d 638, 643 n. 5 (1989) (citing Finley to the effect that "where there is no independent basis for federal jurisdiction over the party against whom only a state claim is asserted at the inception of the action, there is no pendent jurisdiction, even where the state claim is closely related to the federal claim"). It is possible, however, that Finley's "negative implication" approach is intended to apply only to statutes, such as the F.T.C.A., which define jurisdiction by reference to claims against "particular parties".[8] If so, Finley would not mean that Congress disfavored pendent party jurisdiction in instances where it employed broadly worded statutory grants of jurisdiction that are phrased not in terms of specific parties but in terms of "all suits in equity and actions at law brought to enforce any liability or duty," as it did in Section 27 of the '34 Act. Given that Finley itself does not explicitly reject the Aldinger approach nor pronounce that the "negative implication" presumption is an interpretive guide to be followed in the analysis of all federal statutes, it may be premature to assume that pendent party jurisdiction is a doctrine already without further application.[9]
Thankfully, it is here unnecessary to decide what interpretive scheme, if any, Finley ordains, for even assuming that this court has the constitutional and statutory power to exercise pendent party jurisdiction post-Finley, this case does not present an instance where judicial economy, convenience and comity would be served by doing so. "Pendent jurisdiction is a doctrine of judicial discretion, not of plaintiff's right...." Mahoney v. National Organization for Women, 681 F.Supp. 129, 136 (D.Conn.1987). Here, it would not be sensible to exercise pendent party jurisdiction in view of considerations of judicial economy, convenience and fairness to the parties, and comity. 640 Broadway Renaissance Co. v. Cuomo, 714 F.Supp. 686, 692 (S.D.N.Y. 1989) citing Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139, and Sparks v. Hershey, 661 F.2d 30, 33 (3rd Cir.1981).
Those considerations often favor asserting jurisdiction over a pendent state-law claim in circumstances, such as here, where at least some of the plaintiffs' federal law claims could not be brought in a state court.[10] When that is true, a federal court provides the only forum in which all related claims can be heard togetherpresenting a clear savings in terms of judicial economy and generally a convenience to at least some of the litigants. See Aldinger, 427 U.S. at 18, 96 S.Ct. at 2422; Bolton v. Gramlich, 540 F.Supp. 822, 846 (S.D.N.Y. 1982).
An exceptional circumstance is present in this instance, however, that obviates those ordinary benefits. Plaintiffs here ask the court to take jurisdiction over a dispute it has with Lee & Mason that is already pending before a state court. That Maryland action to recover on the notes was instituted by Lee & Mason prior to its inclusion in Bruce as a defendant. Plaintiffs' *131 holder-in-due-course claim has been asserted there as a defense to Lee & Mason's right to collect on the notes. Thus, the case presents factual and legal issues identical to those raised by the portion of the Tenth Claim of the Bruce complaint that relates to Lee & Mason.
Clearly it would be wasteful to try that portion of the Tenth Claim here and again in Maryland state court. Had the Maryland action not preceded the amendment of the Bruce complaint naming Lee & Mason as a defendant, that possibility might have been avoided by an order of this court enjoining Lee & Mason from bringing such a claim anywhere other than in this court, as a compulsory counterclaim. Indeed, as noted, this court's opinion of February 9, 1988, required all then-named defendants to this action to do exactly that. Now, however, the possibility of duplicative litigation can be avoided only by order of this court declining to exercise jurisdiction over Lee & Mason.
The reason that is so was set forth in the court's February 9, 1988 opinion. There it was observed that if a collection suit on the notes had already been filed in state court by one of the then-named defendants, the Anti-Injunction Act, 28 U.S.C. § 2283, would bar the court from enjoining the defendant who had instituted such action from proceeding therewith. Bruce v. Martin, 680 F.Supp. at 620 & n. 5, citing Seattle Totems v. NHL, 652 F.2d 852, 855 n. 5. Neither party has suggested any reason why that observation carries any less force today.[11] Because it does not, this court plainly lacks the power to enjoin the prior state court action in Maryland that Lee & Mason instituted.
This legal limitation upon the court's power necessarily impacts the court's evaluation of the wisdom of asserting pendent party jurisdiction over Lee & Mason. Principally, it eliminates any justification for jurisdiction predicated upon conserving judicial resources  or saving the litigants from the expense of piecemeal litigation  by trying the action all in one court. Unless Lee & Mason were to voluntarily stay or withdraw its Maryland action, asserting jurisdiction over Lee & Mason here will in no way save the courts or plaintiffs the expense of duplicative litigation. Because this court lacks the power to enjoin the *132 Maryland action, plaintiffs will be litigating there regardless of the jurisdictional decision here. Thus, the effect of asserting jurisdiction here will be simply to add to this court's workload and to Lee & Mason's litigation expenses by forcing it, too, to participate in duplicative proceedings. While some rough justice might thereby be meted out, no interest in judicial economy or litigation efficiency would be served thereby. Plainly, those concerns point in the opposite direction, i.e., in favor of refraining from taking jurisdiction over the dispute.
So too do considerations of comity. It is a "well-settled principle in this Circuit that `where there are two competing lawsuits, the first suit should have priority, absent the showing of balance of convenience ... or ... special circumstances ... giving priority to the second.'" First City National Bank and Trust Co. v. Simmons, 878 F.2d 76, 79 (2d Cir.1989) (quoting Motion Picture Lab. Technicians Loc. 780 v. McGregor & Werner, Inc., 804 F.2d 16, 19 (2d Cir.1986) and Fort Howard Paper Co. v. William D. Witter, Inc., 787 F.2d 784, 790 (2d Cir.1986)). With respect to defendant Lee & Mason, the Maryland action is the "first suit" and plaintiffs have made no showing of "special circumstances" warranting a departure from the first-to-file rule.[12] Moreover, as demonstrated above, the balance of convenience also is in line with that rule. Therefore, dismissal of Lee & Mason as a defendant, without prejudice, "seems to be the least abrasive method of judicial administration here." First City Bank and Trust Co. v. Simmons, 878 F.2d at 80.

Conclusion
For the above reasons, this court declines to exercise pendent party jurisdiction over the claim against defendant Lee & Mason, assuming the court possesses the statutory authority to exercise such jurisdiction. Lee & Mason's motion to dismiss accordingly is granted, without prejudice.
It is so ordered.
NOTES
[1] Nor do plaintiffs allege diversity of citizenship as a basis for federal jurisdiction over Lee & Mason. As Lee & Mason is a New York corporation with its principal place of business in New York and over seventy of the named plaintiffs in Bruce are also citizens of New York, diversity jurisdiction is not present. See Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978) (diversity jurisdiction requires that each defendant be a citizen of a different state than the citizenship of each plaintiff).
[2] The parties have not addressed the possibility that jurisdiction over the dispute might exist under the theory of "ancillary" jurisdiction. See 13 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction (2d ed.) § 3523. Perhaps that is because the Supreme Court has taken the view at times that "there is little profit in attempting to decide ... whether there are any `principled' differences between pendent and ancillary jurisdiction...." Aldinger v. Howard, 427 U.S. 1, 13, 96 S.Ct. 2413, 2419, 49 L.Ed.2d 276 (1976).
[3] See also Finley, ___ U.S. ___, 109 S.Ct. at 2007, 104 L.Ed.2d at 602 (quoting Owen Equipment & Erection Co., 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978), to the effect that Gibbs "does not end the inquiry into whether a federal court has power to hear the nonfederal claims along with the federal ones. Beyond this constitutional minimum, there must be an examination of the posture in which the nonfederal claim is asserted and of the specific statute that confers jurisdiction over the federal claim."
[4] Gibbs' other requirement that the federal claims be "substantial" has previously been resolved by this court in its opinion of February 9, 1988, in which it found that plaintiffs have demonstrated substantial grounds for litigation of those claims. See Bruce v. Martin, 680 F.Supp. at 623.
[5] While a number of other decisions in this district have addressed pendent party jurisdiction in the context of federal securities claims, see, e.g., Anderson v. Lowrey, 667 F.Supp. 105 (S.D.N.Y.1987); Texwood Ltd. v. Gerber, 621 F.Supp. 585 (S.D.N.Y.1985), these cases were decided on the Article III ground that the state-law claim was insufficiently related to the federal securities claims presented and so do not deal directly with the question of statutory interpretation.
[6] Unlike many of the statutes which have been interpreted to negate pendent party jurisdiction, the jurisdiction-granting language of Section 27 does not define a particular, limited class of potential parties who may or may not be sued or bring suit, but instead speaks jurisdictionally in terms of suits or actions brought to enforce duties or liabilities created by the statute. Cf. Finley v. United States, ___ U.S. ___, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (statutory grant of jurisdiction under Federal Tort Claims Act, 28 U.S.C. § 1346(b), is limited to "claims against the United States"); Owen Equipment & Erection Co. v. Kroger, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978) (diversity grant under 28 U.S.C. § 1332(a)(1) excludes nondiverse parties). Section 27 is simply not an instance where "by virtue of the statutory grant of subject matter jurisdiction ... Congress has addressed itself to the party as to whom jurisdiction pendent to the principal claim is sought." Aldinger, 427 U.S. 1, 16, 96 S.Ct. 2413, 2421, 49 L.Ed.2d 276 (1976).
[7] As Justice Blackmun pointed out in his dissent, requiring a litigant to demonstrate that the statute in question contains an affirmative grant of pendent party jurisdiction is a "meaningless" test:

if the required [negative Congressional] intent could be found in the failure of the relevant jurisdictional statute to mention the type of party in question ... "all instances of asserted pendent-party jurisdiction will by definition involve a party as to whom Congress has impliedly `addressed itself' by not expressly conferring subject-matter jurisdiction on the federal courts."
Finley, 109 S.Ct. at 2011 (quoting Brennan, J., dissenting in Aldinger, 427 U.S. at 23, 96 S.Ct. at 2424).
[8] That may be the import of the penultimate paragraph of the decision, in which the Court stated

"[a]ll of our cases ... have held that a grant of jurisdiction over claims involving particular parties does not itself confer jurisdiction over additional claims by or against different parties. Our decision today reaffirms that interpretive rule...."
Finley, 109 S.Ct. at 2010 (emphasis added).
[9] In that judgment, the court is apparently joined by at least one other court. See 640 Broadway Renaissance Co. v. Cuomo, 714 F.Supp. 686, 690-91 & n. 10 (S.D.N.Y.1989) (considering possible application of Aldinger approach to pendent party jurisdiction post-Finley).
[10] Pursuant to Section 27 of the '34 Act, 15 U.S.C. § 78aa, jurisdiction over claims arising under the Act are exclusively within the jurisdiction of the federal courts. Several of plaintiffs' claims therefore could not be brought in state court.
[11] Independent inquiry supports the soundness of the court's prior holding. The Anti-Injunction Act is "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions." Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers, 398 U.S. 281, 286, 90 S.Ct. 1739, 1742-43, 26 L.Ed.2d 234 (1970). While two of the exceptions might literally seem to apply to the present situation  the allowance for an injunction "where necessary in aid of" the federal court's jurisdiction or "to protect or effectuate its judgments," 28 U.S.C. § 2283  as construed it is clear that neither exception does in fact.

The former "in aid of jurisdiction" exception applies principally in in rem actions to enjoin suits in other courts involving the same res, e.g., Lankenau v. Coggeshall & Hicks, 350 F.2d 61 (2d Cir.1965). It does not "allow a federal court to enjoin state proceedings merely because they involve issues presented in a federal in personam action." 17 Wright, Miller & Cooper, Federal Practice and Procedure Jurisdiction § 4225 at 535. That is true even if "the state court action involves a question of federal law, or ... may have an issue-preclusion effect in the federal action, or even [if] ... the state action may involve a claim that is a compulsory counter-claim in the federal action." Id. at 534 (citing cases); see also Chick Kam Choo v. Exxon Corp., 486 U.S. 140, 108 S.Ct. 1684, 1691, 100 L.Ed.2d 127 (1988).
The latter exception  to "protect or effectuate" a federal court's judgments  is equally inapplicable to this case. Commonly referred to as the "relitigation exception," this provision permits a federal court to enjoin a state court from deciding a dispute that already has been conclusively resolved by entry of judgment in federal court. 17 Wright, Miller & Cooper, Federal Practice and Procedure, Jurisdiction § 4226 at 548. It is generally thought "that this does not permit a federal court to enjoin state proceedings to protect a judgment that the federal court may make in the future but has not yet made." Id., § 4226 at 548-49 (citing cases). While there may be some flexibility to that rule, see In re Baldwin-United Corp., 770 F.2d 328, 335-36 (2d Cir.1985) (affirming injunction issued prior to federal court's reaching judgment where necessary to prevent commencement of state court actions which would undermine impending settlement of multidistrict federal litigation), this court is aware of no instance where, prior to reaching judgment, a federal court has relied upon this exception to enjoin a pending proceeding in state court commenced by a party prior to its inclusion in the federal action.
[12] Its arguments in this regard are all inapposite, in that they are predicated on the mistaken assumption that if the claim against Lee & Mason is heard here, it will not go forward in Maryland. Unfortunately that is not a scenario that reasonably can be anticipated, in view of this court's inability to stay the Maryland action. Had plaintiffs, who had knowledge prior to the commencement of the Bruce action that Lee & Mason was the holder of their notes, had the foresight to name Lee & Mason as a defendant in Bruce from the beginning, that would not be so.